1999-NMCA-009

974 P.2d 158

**STATE of New Mexico ex rel., CHILDREN, YOUTH & FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**TAMMY S. and Jerald F., Respondents–Appellants.**

**In the Matter of Jessica F. and Jeremy S., Children.**

**No. 19,135.**

Court of Appeals of New Mexico.

Nov. 13, 1998.

Angela L. Adams, Chief Children's Court Attorney, Roy E. Stephenson, Children's Court Attorney, Children, Youth & Families Dep't, Santa Fe, for Appellee.

Robert Waterworth, Albuquerque, Nancy L. Simmons, Aliza Organick, Law Offices of Nancy L. Simmons, Albuquerque, for Appellant Tammy S.

Ronald R. Bratton, Albuquerque, for Appellant Jerald F.

### OPINION

PICKARD, J.

{1}  Appellant Tammy S. (Mother) is the mother of Jessica F. and Jeremy S. Appellant Jerald F. (Father) is the father of Jessica.  On November 24, 1997, the district court terminated the parental rights of Appellants with respect to Jessica, age three, and Jeremy, age seven.  Both Mother and Father challenge the sufficiency of the evidence supporting the termination decision, and Mother also claims ineffective assistance of counsel.

{2} We affirm with regard to Father and conditionally affirm with regard to Mother. We remand for the limited purpose of conducting an evidentiary hearing to provide Mother an opportunity to prove her ineffective-assistance-of-counsel claim by showing that her attorney had a conflict of interest that prejudiced her case.

**BACKGROUND**

{3} The parties agree on the essential facts underlying the termination of parental rights. The children were originally removed from the parental home in July 1996 as a result of multiple reports of abuse and neglect. Specifically, Mother stated that Father kicked Jeremy on the legs and stomach and bloodied Jessica's lip by violently pushing her in the face. Mother also recounted one occasion when, while intoxicated, Father dropped Jessica onto the pavement and another instance when he dragged her out of her car seat and dropped her on the gravel driveway. The Children, Youth and Families Department (hereinafter "Department") developed a treatment plan which estimated that, if the parents complied, they would reunite with the children in February 1997. The treatment plan for the parents included alcohol treatment, domestic violence counseling, parenting classes, and the establishment of a stable environment for the children.

{4} On September 16, 1996, both Mother and Father pled no contest to allegations of neglect due to lack of proper parental care and control. The Department initiated a search for a guardianship situation for the children. The Department and the court then lost contact with Mother and Father for several months.

{5} Mother and Father appeared telephonically from Casper, Wyoming at an assessment hearing on August 7, 1997. Mother testified that in the thirteen months since relinquishing custody, neither she nor Father had visited the children or established a stable home for them. She further stated that Father had beat her up while they were living in Aurora, Colorado. Father stated that he had been arrested during this period for battery and DWI, though the battery charges were dropped. He testified that he had not attended any domestic violence coun-

seling. Mother and Father attended two family therapy sessions in Casper between August 6, and September 8, 1997.

{6} On October 29, 1997, Mother and Father appeared at a hearing in Farmington, New Mexico, with their attorney. Counsel indicated that the couple wanted to relinquish their parental rights to the children. The next day, Mother and Father decided that they would not voluntarily relinquish their parental rights. The matter was therefore scheduled for a hearing on the termination of their parental rights.

{7} Mother and Father were represented by joint counsel at the termination hearing on November 21, 1997, as they had been throughout the proceedings. Former Department social worker Tina Laird appeared telephonically at the hearing. She testified that Mother had called her from Colorado and told her that Father had beaten her. According to Laird, Mother expressed a desire to return to Farmington to be near the children but instead went to Wyoming to be with Father. Laird testified that Father had threatened the children's foster parents and as a result he and Mother were not allowed to have phone contact with the children. Laird further stated that Father had not maintained sobriety and neither parent had attended counseling for domestic violence, although Mother had signed up for counseling.

{8} Father testified that he had been jailed for domestic violence and that other, similar charges had been made against him, but Mother had had them dropped. He admitted that he had not complied with the treatment plan.

{9} Mother testified that she was a victim of domestic violence and would go to classes if it meant that she would get her children back. She also testified that she had attempted to seek assistance from organizations for battered women in Wyoming, but they would not help her because her children were not with her. She stated that she had tried to see the children and that they were her number-one priority, but had been told that she could not see them.

Mother also stated that she had not fully understood the treatment plan.

{10} The judge asked Mother if anyone had discussed with her the idea that she could see the children or have them back if she were not with her boyfriend. Mother indicated that someone had spoken with her about these issues. She did not mention whether she had received such advice from her attorney. The joint attorney for Mother and Father argued that her clients did not understand the expectations of them under the treatment plan. She further argued that Mother did not understand the ramifications of her continued relationship with Father, and that the attorney did not believe that options were discussed with her clients in a way they could understand. The district court terminated the parental rights of Mother and Father.

## DISCUSSION

### Sufficiency of the Evidence

{11} The trial court terminated parental rights under NMSA 1978, § 32A–4–28(B)(2) (1997), which provides for termination when:

> the child has been a neglected or abused child as defined in the Abuse and Neglect Act ... and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child. The court may find in some cases that efforts by the department or another agency are unnecessary, when there is a clear showing that the efforts would be futile[.]

{12} Father challenges the termination based on the sufficiency of the evidence. He does not argue that he did not neglect the children. Father instead claims that the Department did not demonstrate by clear and convincing evidence that the dangerous conditions were unlikely to change, that Department made reasonable efforts to remedy the problems, and that termination was in the best interests of the children. All of these claims lack merit.

{13} It is the state's burden to prove the statutory grounds for termination by clear and convincing evidence. *See State ex rel. Children, Youth & Families Dep't v. Joe R.*, 1997–NMSC–038, ¶ 10, 123 N.M. 711, 945 P.2d 76. This Court will uphold the termination if, viewing the evidence in the light most favorable to the judgment, a fact finder could properly determine that the clear and convincing standard was met. *See In re Termination of Parental Rights of Eventyr J.*, 120 N.M. 463, 466, 902 P.2d 1066, 1069 (Ct.App.1995). Our review of the record indicates the judgment of the children's court terminating Father's parental rights was supported by clear and convincing evidence.

{14} The Department made reasonable efforts to assist Father. As shown in the treatment plan of August 28, 1996, the Department recommended a psychological evaluation, alcohol treatment, and domestic violence counseling. The Department provided the name of the psychologist and suggested one possible alcohol treatment program. Father acknowledged that he did not participate in domestic violence counseling. Nor did he obtain the psychological evaluation or complete alcohol abuse treatment.

{15} Father did not establish a stable residence or employment as prescribed in the treatment plan. Instead, in the year that the children were in state custody, Father lived in New Mexico, Colorado, Nevada, and Wyoming. He was twice arrested, once for assault and battery and once for domestic violence, and Mother placed a restraining order against him. His current location is unknown. Father's transience, failure to communicate, and lack of cooperation rendered the Department's efforts sufficient. It was reasonable for the trial court to find that further efforts would be futile. *See* § 32A–4–28(B).

{16} Substantial evidence of a clear and convincing nature also supports the district court's finding that termination would serve the children's best interests. They were removed from their parents' care due to violence in the home, directed both at them and Mother. In the sixteen months between the removal of the children and termination of

parental rights, Mother and Father showed little interest in the children and took no real steps toward creating a safe and stable environment for them. We therefore agree with the Department that the children should not be kept waiting for a home life with Mother and Father when there is no indication that it will ever come to pass. *See Reuben & Elizabeth O. v. Department of Human Servs.*, 104 N.M. 644, 650, 725 P.2d 844, 850 (Ct.App.1986).

{17} Mother similarly claims that the Department failed to offer clear and convincing evidence in support of termination of her parental rights. Like Father, she does not challenge the neglect finding on appeal. Moreover, as in Father's case, the Department set up a treatment plan for Mother which included employment, establishment of a stable home, and participation in counseling. Mother failed to follow up on these suggestions. She repeatedly indicated that she intended to stay with Father, and she did in fact reunite with him after filing a restraining order against him. She did not seek domestic violence counseling as recommended. While we recognize the difficulty of Mother's situation, the focus in termination proceedings is on the children's needs and welfare. *See* § 32A-4-28(A).

{18} In light of the above, and particularly in light of her demonstrated intent to continue her relationship with Father, there was sufficient evidence that Mother was unable to protect the children from Father's abuse or to properly provide for them. There was also sufficient evidence that the causes and conditions of abuse or neglect were unlikely to change in the foreseeable future. Sufficient evidence supported the district court's conclusion that termination of Mother's parental rights was in the best interests of the children. *See* § 32A-4-28(B)(1).

*Ineffective Assistance of Counsel*

{19} The district court appointed joint counsel for Mother and Father upon the filing of the abuse/neglect petition. *See* NMSA 1978, § 32A-4-29(F) (1997) (providing for court-appointed counsel in termination cases). Mother contends that this arrangement created a conflict of interest that rendered her counsel's assistance ineffective. Whether the appointment of a single attorney in this case created a conflict of interest is a question of law that this court reviews de novo. *See State v. Santillanes*, 109 N.M. 781, 783, 790 P.2d 1062, 1064 (Ct. App.1990). This question is properly addressed for the first time on appeal, as counsel below is not expected to raise this claim against herself. *See In re Termination of the Parental Rights of James W.H.*, 115 N.M. 256, 257, 849 P.2d 1079, 1080 (Ct.App. 1993).

{20} The right to effective assistance of counsel free from conflicts of interest is guaranteed in criminal cases by the Sixth Amendment to the United States Constitution. *See State v. Sosa*, 1997–NMSC– 032, ¶ 20, 123 N.M. 564, 943 P.2d 1017; *see also* Rule 16–107 NMRA 1998 (Rule of Professional Conduct addressing conflict of interest). The right to effective counsel also extends to termination cases. *See James W.H.*, 115 N.M. at 259, 849 P.2d at 1082. In that case, we acknowledged that the majority of jurisdictions utilize the same standard for effective assistance in juvenile cases as in criminal cases, and we utilized the criminal standard for the purposes of that case. *See id.* As in *James W.H.*, the criminal standard is instructive here, although the outcome would not change under the lesser standards of the minority jurisdictions. *See id.*

{21} It is well established in New Mexico that counsel has a duty to avoid a conflict of interest. *See State v. Talley*, 103 N.M. 33, 36, 702 P.2d 353, 356 (Ct.App.1985). For an ineffective assistance claim to lie based on a conflict of interest, there must be an actual conflict and not just a possibility of conflict. *See Churchman v. Dorsey*, 1996– NMSC–033, ¶ 12, 122 N.M. 11, 919 P.2d 1076. "The test for determining the existence of an actual conflict is whether counsel 'actively represented conflicting interests' that adversely affected his performance." *Santillanes*, 109 N.M. at 783, 790 P.2d at 1064 (quoting *State v. Robinson*, 99 N.M. 674, 679, 662 P.2d 1341, 1346 (1983)).

{22} Differently stated, a conflict of interest exists if some plausible defense might have been pursued were it not damaging to another's interest. *Santillanes*, 109 N.M. at 783, 790 P.2d at 1064. In the instant case, the basis of the Department's case for termination lay in the domestic-violence relationship between Mother and Father, as well as Father's alcoholism and abuse of the children. Therefore, it appears that Mother's most promising defense against termination required leaving Father and participating in the Department's treatment plan. This plausible defense could have damaged Father's ability to retain parental rights, thereby creating what appears to be an actual conflict of interests for Mother and Father's joint counsel.

{23} From the testimony, it appeared that Mother was more willing than Father to adhere to the treatment plan and had kept in at least sporadic contact with the Department and the children. Mother indicated at the termination hearing that she would be willing to leave Father, if that was required to get custody of her children. In light of these facts, it seems that Mother's cause could have been advanced had she not maintained her relationship with Father.

{24} Mother testified that someone had explained her options to her. However, there is no evidence that her attorney counseled her on the ramifications of her continued relationship with Father. Contrary to the Department's suggestion on appeal, the counseling role is not properly left solely to a social worker. Rather, it is the practical reality in certain types of poverty law cases, particularly cases similar to those involved here. In such instances, an attorney's advice regarding the law and how it impacts upon a client's life choices may be at least as important as the attorney's performance in the litigation.

{25} In this case, it appears that for counsel to have counseled Mother on the ramifications of her continued relationship with Father would have damaged Father's ability to gain access to his child and created an actual conflict of interest. Therefore, we hold that in a domestic violence situation where zealous advocacy in one re-spondent's case may threaten to damage a co-respondent's case, a court should appoint separate counsel.

{26} Mother suggests that we remand this issue for an evidentiary hearing. This Court has required this remedy when the record establishes a prima facie case of ineffective assistance of counsel. That occurs when "(1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State ex rel. Children, Youth & Families Dep't v. David F., Sr.*, 121 N.M. 341, 348, 911 P.2d 235, 242 (Ct.App.1995). Alternatively, this Court has utilized the standard that remand for an evidentiary hearing is required where a substantial question is raised concerning issues not adjudicated at the termination hearing. *See id.* (citing *State ex rel. Juvenile Dep't v. Geist*, 310 Or. 176, 796 P.2d 1193, 1204 n. 16 (1990)). The facts as presented in this case require remand under the latter standard.

{27} In this connection, we note that the criminal cases on conflicts of interest would appear to call for outright reversal on facts comparable to this case. *See Santillanes*, 109 N.M. at 785, 790 P.2d at 1066; *State v. Aguilar*, 87 N.M. 503, 504, 536 P.2d 263, 264 (Ct.App.1975), *overruled on other grounds by Robinson*, 99 N.M. at 679, 662 P.2d at 1346. We do not believe that such a remedy is appropriate in this case. First, we have recognized the "'inadvisability of mechanically applying criminal law standards to a civil juvenile proceeding where the resolution turns not on guilt or innocence, but on the best interest of the child.'" *James W.H.*, 115 N.M. at 259, 849 P.2d at 1082 (quoting *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988)). Second, application of such a remedy would be particularly inappropriate in this case. We take note of the fact that Mother's whereabouts have been unknown during the appeal and may not yet be known. Accordingly, an outright reversal here could place the children in a state of permanent limbo.

{28} Therefore, the appropriate remedy in this case is a remand to the district court for an evidentiary hearing to explore the

merits of the Mother's claim by providing her with an opportunity to demonstrate that her counsel's conflict of interest prejudiced her cause. *See David F., Sr.,* 121 N.M. at 348, 911 P.2d at 242. If Mother does not appear for a properly noticed hearing, we consider it to be in the children's best interests to finalize the termination of her parental rights in her absence. If Mother does appear, the district court shall determine on the basis of Mother's presentation and any rebuttal by the Department whether a conflict of interest prejudiced her cause. If it did, Mother shall be awarded a new hearing. If not, the termination of her parental rights is affirmed. The termination of Father's parental rights is affirmed in any event.

{29} **IT IS SO ORDERED.**

DONNELLY and ALARID, JJ., concur.