This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

     Petitioner-Appellee,

v.                                       **No. A-1-CA-37533**

**STEPHANIE H.,**

     Respondent-Appellant,

and

**MICHAEL L.,**

     Respondent,

**IN THE MATTER OF CARROL ANN L.,
a/k/a CORRALLEE L.,**

     Child.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Daylene A. Marsh, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Richard J. Austin, P.C.
Richard J. Austin
Farmington, NM

Guardian Ad Litem

**DECISION**

**VANZI, Judge.**

**{1}** Stephanie H. (Mother) appeals the termination of her parental rights to Carrol Ann L. (Child). Mother argues that the evidence was not clear and convincing that the Children, Youth, and Families Department (the Department) made reasonable efforts to assist her or that she would not be able to ameliorate the causes of Child's neglect within the foreseeable future. Unpersuaded that the district court erred in finding to the contrary, we affirm.

**{2}** We set out only the pertinent facts and law in connection with the issues analyzed because the parties are familiar with the facts and procedural posture of this case and because this is a non-precedential expedited bench decision. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

**Background**

**{3}** The following facts are undisputed. The Department took Child into custody on October 13, 2016. In the affidavit submitted by the Department in support of its motion for custody, the Department alleged that Mother and Child were living in the home of Mother's parents. Oory L., Child's older sister, had reported that Mother was using methamphetamines and that Mother "beat" her, and called her a "snitch bitch." After an altercation, there were red marks on Oory and her shirt was torn. Oory also reported that Mother encouraged Oory to smoke methamphetamine with her. Oory subsequently tested positive for methamphetamine. On the other hand, Child denied Mother's drug use and blamed her older sister, Oory, for the conflict with Mother. There were reports at Child's school that Child was using marijuana and drinking.

**{4}** At a hearing in February 2017, Mother did not contest the allegation that she had neglected Child under NMSA 1978, Section 32A-4-2(F)(2) (2016, amended 2018),[1] which provides that a child is neglected if the child is "without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent . . . or the failure or refusal of the parent, . . . when able to do so, to provide them[.]" In its judgment memorializing the adjudication, the district court noted that "[t]he factual basis for the

---

1 Now codified at NMSA 1978, Section 32A-4-2(G)(2) (2018).

plea is as follows: [Mother]'s substance abuse issues led to her being unable to provide proper care and control for [Child]."

{5}     The district court also adopted a treatment plan that required Mother to provide a safe and stable environment for Child, including: provide housing and provide the address to the Department, obtain domestic violence and mental health assessments, attend bio-parenting orientation and parenting classes and demonstrate skills learned, maintain weekly contact with the Department, maintain weekly contact with Child, undergo a substance abuse evaluation, and undergo drug testing through hair follicle testing and urinalyses.

{6}     The Department moved to terminate parental rights (TPR) in November 2017, approximately thirteen months after the Department took custody of Child, but only eleven months after the dispositional order adopted Mother's treatment plan. The TPR trial began approximately four and a half months later in April 2018. At the beginning of the TPR trial, the district court took judicial notice of an August 31, 2016 judgment against Mother for use or possession of drug paraphernalia. Mother did not object to judicial notice of the judgment.

{7}     At the TPR trial, Alycia Wright testified first. Wright has worked at Assurance Home, a therapeutic group home as well as an emergency shelter, since 2007. She is currently an assistant director and clinical therapist for Assurance Home and is a licensed social worker. The district court accepted her as an expert in mental health diagnosis and treatment. Wright testified that Child had been at Assurance Home since March 8, 2017, in its shelter program. While Child was not required to participate in therapy as part of that program, she had elected to participate in therapy with Wright throughout her stay in the program. Wright testified that Child cares for Mother and "there is definitely love in that relationship." However, based upon the words Child has used to describe her relationship with Mother, Wright stated that Child knows that Mother's substance abuse has put a strain upon their relationship and that it would not be in Child's best interests to live with Mother at this time. Wright had supervised a single phone call between Child and Mother and reported that it seemed to go very well. Nonetheless, Wright had determined that all phone calls between Child and Mother should be supervised until further notice and she believed that this decision had been communicated to Mother. Wright testified that it was very difficult to tell if there was a bond between Child and Mother. However, Wright also stated that Child loves and cares for Mother and that this could constitute a bond between the two.

{8}     Carla Goddard is a probation officer for the district court in Farmington, New Mexico and Aztec, New Mexico. She is trained in substance abuse testing. Goddard also is a manager of the court's alternative sentencing program, and the district court accepted her as a records custodian for the alternative sentencing program. Goddard testified that Mother had been ordered by the court to participate in a urinalysis on three occasions. On October 5, 2016, Mother tested positive for amphetamines and methamphetamine. On December 19, 2016, Mother showed up for the drug test and told the staff she would be clean, but was unable to provide a sample after three

attempts, even though she was provided extra time to do so. Following the unsuccessful third attempt, an officer arrested Mother for outstanding warrants. On February 6, 2017, Mother tested positive for amphetamines and methamphetamine.

{9}     Deanna Moore works for Reliance Medical Group, which also tested Mother for drug use. She was admitted by the court as a custodian of Reliance Medical Group's records. Since October 1, 2016, Mother had been tested twice by Reliance. On December 5, 2016, Reliance obtained a urine sample for testing from Mother; the results were negative. On February 6, 2017, Reliance tested Mother's drug use with a hair follicle test, which was positive for amphetamines and methamphetamine. Moore explained that it takes about a week for drugs to enter a hair follicle and that, if a person underwent testing on the same day as using drugs, the urine test result would be positive while the hair follicle test result would be negative. She explained that, when both the urinalysis and the hair follicle test are positive on the same day, the results suggest that the person had used that drug on more than one occasion.

{10}     Gwendolin Begaye is a Department permanency planning worker (PPW) who was assigned to Mother's case in August 2017. Begaye stated that the Department had been unable to place Child safely with either parent since October 2016. When she was assigned to the case, Begaye contacted Mother at least every other week by text, and each time Mother promptly responded to her until September 2017, when, in her last text to the Department, Mother stated she wanted nothing further to do with the Department and her treatment plan. Despite Mother's statement, the Department had a home visit with Mother in January 2018, during which they reviewed her treatment plan. Begaye described a "calendar," signed by Mother, which directed Mother to call the Department about urinalyses and parenting classes. Begaye discussed the calendars for urinalysis testing for Mother, which track the dates that Mother was expected to call in to the Department each day to find out whether she had a urinalysis scheduled. The calendars indicate that Mother never called in. In January 2018, the Department stopped using this procedure for urinalyses and switched to requiring urinalyses as needed.

{11}     Begaye also discussed compliance letters to Mother setting out Mother's treatment plan dated January, April, and June 2017 and March 2018. Although the previous letters had been returned as undeliverable, the March letter was not. Since Begaye did not have a valid address for Mother, she asked Mother to meet her at the Department office, but Mother refused. In January 2018, after the Department contacted Mother, Mother provided the Department with her current and accurate address. Begaye testified that, prior to January 2018, Mother had provided a nonexistent address to the Department.

{12}     The Department referred Mother for mental health and substance abuse assessments, which Mother completed in October 2016. During a mental health assessment, Mother was asked to perform a subsequent updated assessment, but Mother never performed the updated assessment. Begaye stated that Mother had never participated in a single substance abuse class nor a single parenting class during the

duration of this case. Begaye also discussed the family time guidelines provided by the Department to Mother, including guidelines dated October 2016, November 2016, and February 2018, all of which were signed by Mother. The Department utilized these documents to inform parents, like Mother, of the Department's guidelines surrounding visitation of their children. The most recent approved visitation between Mother and Child was in March 2018. The only other approved contact was a single phone call earlier. However, Begaye stated there were a number of unapproved text message contacts between Mother and Child. Begaye stated that these communications were concerning because Mother might try to manipulate Child. Begaye stated that the Department's concerns with Mother stem from her substance abuse and Mother's physical abuse of Oory. She testified that, over the course of the case, Mother had done nothing to address either of those issues.

**{13}** Begaye testified that Mother was aware that her children were in the Department's custody, but Mother only wanted unsupervised visits with Child, and she wanted Child to return to live with her. In order for the Department to approve unsupervised visits with Child, Mother had to comply with her treatment plan. The Department's biggest concern with Mother was her substance abuse issues. The Department explained this to Mother, but Mother did not participate in the services the Department recommended to address substance abuse. Then, in September 2017, Mother told the Department she did not want to cooperate with the Department, and since then, Mother has made no independent efforts with regard to her treatment plan.

**{14}** After the TPR trial, the district court found as follows:

9. As to [Mother]:

a. [Mother] did a mental health or substance abuse assessment October 2016, however, there were problems with the assessment, therefore, the [D]epartment asked for an updated assessment which [Mother] did not do.

b. [Mother] has continued to test positive for drugs throughout this case.

c. [Mother] did not do substance abuse counseling or a parenting class.

d. Visitation between [C]hild and [Mother] was appropriate but superficial.

e. [C]hild cares about [M]other.

f. There is a bond between [C]hild and [Mother].

g. [Mother] sent a text to the [D]epartment stating that she would not work with them.

h. There was a period of time during this case that [Mother] did not contact the [D]epartment and the [D]epartment did not have a correct address for [Mother].

10. The motion to terminate parental rights should be granted.

Mother specifically challenges finding of fact 9(D) and 10. She does not challenge the other findings of fact entered by the district court. *See* Rule 12-318(A)(4) NMRA ("A contention that a . . . finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]").

## Discussion

**{15}** Pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005), "the court shall terminate parental rights" when "the child has been a neglected or abused child" and the district court finds that "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the [D]epartment . . . to assist the parent in adjusting the conditions that render the parent unable to properly care for the child." The Department bears the burden "to prove [these] . . . grounds for termination by clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. "Clear and convincing evidence is . . . evidence that 'instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.' " *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration omitted) (quoting *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 2, 120 N.M. 463, 902 P.2d 1066). On appeal, this Court "will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. This Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833.

**{16}** Mother argues on appeal that the evidence was not clear and convincing that the Department made reasonable efforts to assist her or that she would not be able to ameliorate the causes of Child's neglect within the foreseeable future. We address these arguments in turn.

## Reasonable Efforts

**{17}** Mother contends that the Department failed to make reasonable efforts to assist her in addressing the causes of Child's neglect, to wit: Mother's substance abuse. She maintains that the Department did not even begin implementing the treatment plan until December 2016 and "then gave up on Mother in November 2017, only eleven months later."

**{18}** This argument fails on both the facts and the law. Although CYFD moved for termination only eleven months after adoption of the treatment plan, the TPR hearing was not held until April 2018, over four months later. At the hearing, the district court heard evidence that the Department provided some services to Mother even after it filed the motion to terminate. In sum, even though CYFD filed for termination eleven months after adoption of the treatment plan, CYFD continued to reach out to Mother for fifteen months after adoption of the plan.

**{19}** In addition, the motion for TPR and TPR trial occurred approximately thirteen months and seventeen months after CYFD took custody of Child. As Mother recognizes, the Adoption and Safe Families Act of 1997 (ASFA) provides guidance on the reasonableness of CYFD's efforts. Pub. L. No. 105-89, 111 Stat. 2115 (1997) (codified as amended in scattered sections of 42 U.S.C.). While "[t]he fifteen-month period described in ASFA for 'time-limited reunification services' provides us some guidance in how we assess the duration of reasonable efforts under state law[,]" we also have recognized that the purpose of ASFA is to "encourage[] states to move more quickly to terminate parental rights and give[] states a financial incentive to increase the number of adoptions." *Patricia H.*, 2002-NMCA-061, ¶ 26. Hence, ASFA defines a limit to the duration of CYFD's services, not a minimum period. The Abuse and Neglect Act also recognizes a limit to the duration of CYFD's efforts. *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 21, 136 N.M. 53, 94 P.3d 796 (stating that, like ASFA, "[s]tate law allows a reunification plan to be maintained for a maximum of fifteen months as well"); *see, e.g.*, NMSA 1978 § 32A-4-29(A) (2009) (stating that "[a] motion to terminate parental rights may be filed at any stage of the abuse or neglect proceeding"); NMSA 1978, § 32A-4-25.1(C) (2016) ("If the court adopts a permanency plan of reunification, the court shall adopt a plan for transitioning the child home within a reasonable period depending on the facts and circumstances of the case, but not to exceed six months[.]"); § 32A-4-29(G) (mandating a motion to terminate parental rights when a child has been in foster care "not less than" fifteen months). Moreover, the reasonableness of CYFD's efforts depends on the "totality of the circumstances," which may include "the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814 (internal quotation marks and citation omitted).

**{20}** The district court could reasonably determine that CYFD's efforts were reasonable in light of Mother's failure to engage with them. In *Keon H.*, our Supreme Court addressed whether the Department's efforts were reasonable under circumstances similar to those here. *Id.* ¶ 36. In that case, "the Department prepared a

treatment plan for [the f]ather, went over the treatment plan with [him], provided [the f]ather with the Department's contact information, and scheduled appointments for [the f]ather's psychosocial assessment[,]" but he "did not show up for the appointments and did not participate in the psychosocial assessment." *Id.* ¶ 43. The Court noted that the Department had provided its contact information to the father, but the father never contacted his PPW, either when he was in or out of custody. *Id.* ¶ 44. Moreover, the father had failed to keep in touch with his attorney, despite the court's order that he do so. *Id.* ¶ 49. The Supreme Court observed that the father "ha[d] continuously failed to show any desire or willingness to address the conditions and causes that brought [the c]hild into custody. [The f]ather never contacted the Department, he missed or canceled scheduled appointments with the Department, and he only visited [the c]hild once or twice at the beginning of the case." *Id.* 48.

**{21}** Stating that "[b]oth the Department and [the parents] are responsible for making efforts toward reunification of the family[,]" the Court concluded that "[t]he record indicates that the Department made reasonable efforts to assist [the f]ather, but [he] did not take advantage of those efforts." *Id.* ¶¶ 48, 50; *see* NMSA 1978, § 32A-4-22(C) (2016) ("[T]he court shall . . . order the [D]epartment to implement and the child's parent . . . to cooperate with any case plan approved by the court."). Because its "job is not to determine whether the Department did everything possible" but to "determine whether the Department complied with the minimum required under law," the Court further concluded that "the Department's efforts, although imperfect, were reasonable" in light of the father's limited cooperation with the Department and compliance with the treatment plan. *Keon H.*, 2018-NMSC-033, ¶ 43 (alterations, internal quotation marks, and citation omitted).

**{22}** Here, there was evidence that the Department provided Mother with the treatment plan and informed her that her addiction was a barrier to reunification with Child and referred her to mental health and substance abuse evaluations and services. Moreover, the district court found that Mother tested positive for drug use "throughout this case," "did not [participate in] substance abuse counseling," did not maintain contact with the Department, and told the Department she did not want to work with the Department on her treatment plan. Mother does not contest these findings of fact. Given the length of time Child has been in custody, the duration of the Department's services to Mother, and Mother's lack of engagement with those services and progress toward sobriety, we conclude that the district court could reasonably find that the duration of the Department's efforts was reasonable under the totality of the circumstances.

**Foreseeable Future**

**{23}** Mother also argues that there was "no evidence linking Mother's alleged addiction specifically with the neglect of" Child and that, "in light of [Mother's] serious addiction to methamphetamine[], the lack of evidence that her addiction had affected her parenting of [Child] specifically, and the parental bond that existed," the Department's efforts were unreasonable because the Department should have "allowed a longer time for Mother to face her addiction." We reject both arguments.

**{24}** First, Mother pled no contest to the adjudication of neglect, the factual basis for which was "[Mother]'s substance abuse issues [which] led to her being unable to provide proper care and control for [Child.]" We therefore reject Mother's argument on appeal that there was no evidence linking her methamphetamine use to Child's neglect.

**{25}** Second, viewing the evidence in the light most favorable to the judgment, we conclude that the district court "could properly determine that the clear and convincing standard was met" as to this element. *Hector C.*, 2008-NMCA-079, ¶ 11 (internal quotation marks and citation omitted). "We have interpreted the term 'foreseeable future' to refer to corrective change within a reasonably definite time or within the near future." *Patricia H.*, 2002-NMCA-061, ¶ 34 (internal quotation marks and citation omitted). Moreover, "in balancing the interests of the parents and children, the court is not required to place the children indefinitely in a legal holding pattern." *Id.* (internal quotation marks and citation omitted). As discussed above, as of the date of the TPR trial, Child had been in the Department's custody for seventeen months, two months beyond the fifteen-month period set forth in ASFA. Moreover, the evidence supports the district court's findings that Mother had not maintained sobriety and had not sought services to assist her in doing so. Mother acknowledges that her addiction to methamphetamines is "serious" and "recalcitran[t]." There having been little effort by Mother to address her addiction in the period between the no-contest plea to neglect and the TPR trial, the district court could reasonably conclude that Mother was unlikely to be able to ameliorate that cause of Child's neglect in the foreseeable future.

**Conclusion**

**{26}** For the foregoing reasons, we affirm.

**{27}** **IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**