This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37908

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**

Petitioner-Appellee,

v.

**EDWARD W.,**

Respondent-Appellant,

and

**IN THE MATTER OF MIKELE W. and ELYCIA W.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**William E. Parnall, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Roybal-Mack & Cordova, P.C.
Antonia Roybal-Mack
Albuquerque, NM

for Appellant

Kim Romero Oak
Albuquerque, NM

Guardian Ad Litem

**DECISION**

**VANZI, Judge.**

**{1}** Edward W. (Father) appeals the termination of his parental rights to Mikele W., born July 12, 2004, and Elycia W., born October 22, 2008 (Children). Father argues that the evidence was not clear and convincing that the Children, Youth, and Families Department (the Department) made reasonable efforts to assist him in adjusting the causes and conditions that rendered him unable to care for Children. Unpersuaded that the district court erred in finding to the contrary, we affirm.

**{2}** We set out only the pertinent facts and law in connection with the issues analyzed because the parties are familiar with the facts and procedural posture of this case and because this is a non-precedential expedited bench decision. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

**Background**

**{3}** The following facts are undisputed. The Department took Children into custody on May 6, 2015. In the Affidavit submitted by the Department in support of its motion for custody, the Department alleged that Children were abused and/or neglected. Among other things, the Department had received a referral alleging physical and emotional abuse of Children. Thereafter, the Department learned Father and Children were usually homeless and, although he denied any substance abuse, Father refused a drug test. Father, who had a long history with the Department, likewise had a history of past criminal activity, including domestic violence, and refused all services through the Department, thereby leaving Children without necessary parental support or protection.

**{4}** At a hearing in July 2015, Father did not contest the allegation that he had neglected Child under NMSA 1978, Section 32A-4-2(E)(2) (2009, amended 2018), which provides that a child is neglected if the child is "without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent. . . or the failure or refusal of the parent, . . . when able to do so, to provide them." In the stipulated judgment and disposition memorializing the adjudication as to Father, the district court noted that Father had "exposed [C]hildren to risk of serious harm and neglect due to his faults and habits."

**{5}** The district court adopted a treatment plan, which required Father to participate in a parenting program and individual therapy, provide relative information, sign requested releases, participate in supervised visitation, participate in a psychosocial

evaluation and follow all recommendations, maintain contact with the Department, undergo anger management, substance abuse treatment, and psychological assessments. Father was also directed to follow all recommendations, and undergo drug testing through random urinalyses.

**{6}** At the initial permanency hearing on March 7, 2016, the district court found that the Department had made reasonable efforts to implement the treatment plan but that Father was making "inconsistent and minimal efforts to comply with his treatment plan." The court adopted a permanency plan of adoption for Children that never changed. In February 2017, the Department moved to terminate Father's parental rights (TPR) pursuant to NMSA 1978, Section 32A-4-28(B)(1) and (B)(2) (2005). The TPR trial took place on July 5, 2017. At the beginning of the TPR trial, the district court took judicial notice of Father's no contest plea to neglect.

**{7}** Kate Zephyr testified first at the TPR trial. The district court accepted Zephyr, a licensed mental health counselor, as an expert. Zephyr, who works as a therapist at Open Skies Healthcare, testified that she had been Elycia's therapist for two years and had provided therapy to Mikele for approximately one and a half years. Children both had issues stemming from neglect, abuse, and trauma. For example, Zephyr had to work slowly with Elycia due to Elycia's "high defense mechanisms in terms of dealing with any kind of trauma." Mikele was caught with marijuana at school, disappeared from school and no one knew where he was, he had been acting out angrily, and his grades slipped.

**{8}** Zephyr also saw Father a few times without Children present, but those sessions were ultimately discontinued. She was not able to successfully start family therapy with Father because he was not complying with his parenting plan from the Department. Father's attendance with Zephyr was sporadic. When he did meet with Zephyr, Father blamed the Department for removing Children, blamed the Department for keeping him from Children, and said he did not understand why Children needed therapy. Zephyr told Father that in order for visits to be restarted with Children, he needed to follow his case plan and meet with her to start family sessions. Father did not follow up and never asked to restart family sessions. In the six months leading up to the TPR trial, Father did not have any communication with Children, provided no financial support for Children, and did not participate in any treatment team meetings. Zephyr testified that Father had mental health issues and would "need to do an incredible amount of [his] own personal therapy work" before he would be able to be a healthy, functioning parent.

**{9}** Jessica Benavidez was a Department permanency planning worker (PPW) who was assigned to Father's case in May 2015 and was his PPW until January 1, 2016, when she became a supervisor on his case up to the time of the TPR trial. Benavidez testified that the safety risks at the time Children were removed were substance abuse, anger issues, and housing. She referred Father to Aliviar Counseling for anger management services where Father attended an anger management assessment, as well as to Counseling World for additional such services. In the months before trial, Father did not see Children, did not provide financial support for Children, and did not

send letters to Children. In addition, when Benavidez met with Father in January 2017, she learned that Father had made no progress in his treatment plan, his situation had not changed since Children's placement in foster care, he was not involved in any services, and he blamed the Department for taking Children from him. Benavidez testified that Father acknowledged that referrals were offered to him but he did not use them and agreed that they were "still at square one in regard to the causes and conditions that brought . . . Children into custody."

{10}    During the trial, the district court asked Father, who arrived an hour after the trial began, to submit a sample for a drug test because Father "was acting so erratically" in the courtroom. Mario Valdez, the surveillance officer for juvenile drug court, administered the test on Father, who tested positive for methamphetamine. Father told Valdez that he had used methamphetamine within the last two days.

{11}    Father testified that the last communication he had with Children was nineteen months before trial during a visit at the Department. He told the court that he last used methamphetamine three days prior to the trial and said he takes methamphetamine to help with stress. Father maintained that the best next steps for him to address his severe drug abuse was to "do a substance intake somewhere" and that he had insurance to help pay for an inpatient program. He testified that he had contacted Four Winds Behavioral Health in Rio Rancho, New Mexico, the week before the TPR trial but did not make an intake appointment because he wanted to first see how the district court ruled on his case. The district court reminded Father that in December 2016, Father's then-attorney told the court that Father needed inpatient treatment and the court advised Father at that time to get into an inpatient treatment program. When asked whether he attended inpatient treatment at that time, Father responded, "no, sir, I did not."

{12}    After the TPR trial, the district court found by clear and convincing evidence that Father "abandoned" Children and, on October 12, 2017, entered a judgment terminating Father's parental rights. Father appealed, and this Court proposed to reverse the TPR judgment and "remand to the [district] court to reconsider the termination of Father's parental rights in light of our Supreme Court's interpretation of [Section 32A-4-28](B(2)" in *In re Grace H.*, 2014-NMSC-034, 335 P.3d 746. The Department did not oppose the reversal, and we reversed the judgment. *State ex rel. Children, Youth & Families Dep't v. Edward W.*, No. A-1-CA-36762, mem. op. (Ct. App. April 3, 2018) (non-precedential).

{13}    On remand, the district court issued a second TPR order terminating Father's parental rights pursuant to Section 32A-4-28(B)(2). Among other things, the court found by clear and convincing evidence that the Department "had made referrals to services for him, but admitted that nothing had changed and he was in the same situation as the beginning of the case[.]" It also found that the Department helped facilitate contact with Children and had given Father the opportunity to provide support, but that he had done neither. Thus, the court found that "the causes and conditions of the neglect and abuse are unlikely to change in the foreseeable future, despite the reasonable efforts by the Department and other appropriate service providers to assist [Father] in adjusting the

conditions which render [him] unable to properly care for [C]hildren." This appeal followed.

## Discussion

{14}   Pursuant to Section 32A-4-28(B)(2), "the court shall terminate parental rights" when "the child has been a neglected or abused child" and the district court finds that (1) "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future [(2)] despite reasonable efforts by the [D]epartment . . . to assist the parent in adjusting the conditions that render the parent unable to properly care for the child." The Department bears the burden "to prove [these] . . . grounds for termination by clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. "Clear and convincing evidence is . . . evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted). On appeal, this Court "will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. This Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833.

{15}   Father argues on appeal that the evidence was not clear and convincing that the Department made reasonable efforts to assist him in addressing the causes of Childrens neglect, to wit: Father's "intransigent drug dependence and mental health problems." He maintains that, with minor exceptions, the Department did not provide "evidence of its efforts regarding the services it was ordered to provide Father."

{16}   This argument fails on both the facts and the law. We note at the outset that the reasonableness of the Department's efforts depends on the "totality of the circumstances," which may include "the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814 (internal quotation marks and citation omitted).

{17}   Here, the district court could reasonably determine that the Department's efforts were reasonable in light of Father's failure to engage with them. In *Keon H.*, our Supreme Court addressed whether the Department's efforts were reasonable under

circumstances similar to those here. *Id.* ¶ 36. In that case, "the Department prepared a treatment plan for [the appellant], went over the treatment plan with [him], provided [the appellant] with the Department's contact information, and scheduled appointments for [the appellant]'s psychosocial assessment[,]" but he "did not show up for the appointments and did not participate in the psychosocial assessment." *Id.* ¶ 43. The Court noted that the Department had provided its contact information to the appellant, but the appellant never contacted his PPW, either when he was in or out of custody. *Id.* ¶ 44. Moreover, the appellant had failed to keep in touch with his attorney, despite the court's order that he do so. *Id.* ¶ 49. Our Supreme Court observed that the appellant "ha[d] continuously failed to show any desire or willingness to address the conditions and causes that brought [the c]hild into custody. [The appellant] never contacted the Department, he missed or canceled scheduled appointments with the Department, and he only visited [the c]hild once or twice at the beginning of the case." *Id.* ¶ 48.

**{18}** Stating that "[b]oth [the Department] and [the parents] are responsible for making efforts toward reunification of the family[,]" the Court concluded that "[t]he record indicates that the Department made reasonable efforts to assist [the appellant], but [he] did not take advantage of those efforts." *Id.* ¶¶ 48, 50; *see* § 32A-4-22(C) ("[T]he court shall . . . order the [D]epartment to implement and the child's parent . . . to cooperate with any treatment plan approved by the court."). Because its "job is not to determine whether the Department did everything possible" but to "determine whether the Department complied with the minimum required under law," the Court further concluded that "the Department's efforts, although imperfect, were reasonable" in light of the appellant's limited cooperation with the Department and compliance with the treatment plan. *Keon H.*, 2018-NMSC-033, ¶ 43 (alterations, internal quotation marks, and citation omitted).

**{19}** There was evidence in this case that the Department provided Father with the treatment plan and informed him that his issues with substance abuse, anger management, and parenting were barriers to reunification with Children and referred him to Aliviar Counseling and Counseling World for services. Zephyr repeatedly told Father that he needed to follow the treatment plan that the Department had prepared and given to him. When the district court questioned Zephyr about what specifically she told Father, Zephyr testified that she told Father that in order to have contact with Children he had to follow the treatment plan that the Department had in place and he had to meet with her consistently. Zephyr stated that there was no confusion about what Father needed to do in order to see Children and that he was eligible to re-engage with her at any time. We note as well that Zephyr spoke with Father's therapist at Counseling World where he was assessed and was receiving individual therapy to discuss the work Zephyr was doing with Father. Despite the referrals to Aliviar and Counseling World, and Zephyr's repeated efforts to get Father to comply with the parenting plan and attend sessions with her that would allow Children to communicate with Father in a therapeutic setting, he stopped seeing Zephyr after only a few sessions.

**{20}** In addition to the above, there was substantial evidence that Father understood his obligations under the plan but failed or refused to meet them. For example, the

district court reminded Father that it told him in December 2016 to go to an inpatient treatment program, yet Father did not follow that directive. Further, Father testified that he contacted substance abuse providers the week before trial but before committing to treatment wanted to learn what the district court ruled following trial. Again, he did not enroll in a program despite both the Department's and the district court's effort to address his ongoing substance abuse issues. Father admitted using methamphetamine and tested positive for them at the TPR trial. As well, Father continued to blame the Department for removing Children and keeping them from him.

{21}    Additionally, Father had no contact with Children in the six months before trial, had not communicated with Children in nineteen months, did not send cards, letters or gifts to Children, did not participate in substance abuse counseling, did not maintain contact with the Department, did not participate in treatment team meetings for Children, and refused to participate in any sessions with Zephyr. Given the length of time Children have been in custody, the duration of counseling services repeatedly offered to Father through more than one source, and Father's lack of engagement with those services and progress toward resolving his drug addiction, we conclude that the district court could reasonably find that the Department's efforts were reasonable under the totality of the circumstances.

**Conclusion**

{22}    For the foregoing reasons, we affirm.

{23}    **IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**