This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40371**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

       Petitioner-Appellee,

v.

**PETER P.,**

       Respondent-Appellant,

and

**ANGEL K.,**

       Respondent,

**IN THE MATTER OF PETER K-P Jr.,**

       Child.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Marie C. Ward, District Court Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Cravens Law LLC
Richard H. Cravens, IV
Albuquerque, NM

for Appellant

The Law Office of Ramsey & Hoon, LLC
Mark A. Ramsey
Albuquerque, NM

Guardian Ad Litem

## DECISION

**DUFFY, Judge.**

**{1}** Father appeals the judgment terminating his parental rights to Child. He argues that the district court's determinations that (1) the Children, Youth and Families Department (CYFD), made reasonable efforts to assist Father, and (2) the causes and conditions of the neglect that brought Child into custody are unlikely to change in the foreseeable future are not supported by clear and convincing evidence. We affirm.

## DISCUSSION

**{2}** A court shall terminate parental rights when a child "has been a neglected or abused child as defined in the Abuse and Neglect Act and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] . . . to assist the parent in adjusting the conditions that render the parent unable to properly care for the child." NMSA 1978, § 32A-4-28(B)(2) (2005, amended 2022); *see also State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 21, 132 N.M. 299, 47 P.3d 859 (same). "It is the state's burden to prove the statutory grounds for termination by clear and convincing evidence." *See State ex rel. Child., Youth & Fams. Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158.

> For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true. The function of the appellate court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom if the mind of the factfinder could properly have reached an abiding conviction as to the truth of the fact or facts found.

*State ex rel. Child., Youth & Fams. Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 12, 130 N.M. 781, 32 P.3d 790 (internal quotation marks and citation omitted). "This Court will uphold the termination if, viewing the evidence in the light most favorable to the judgment, a fact finder could properly determine that the clear and convincing [evidence] standard was met." *Tammy S.*, 1999-NMCA-009, ¶ 13. "We employ a narrow standard of review and do not re-weigh the evidence." *State ex rel. Child., Youth & Fams. Dep't v. Amanda H.*, 2007-NMCA-029, ¶ 19, 141 N.M. 299, 154 P.3d 674.

**I.      Clear and Convincing Evidence Supports the District Court's Conclusion That CYFD Made Reasonable Efforts**

**{3}**    Father first contends that CYFD failed to present clear and convincing evidence that it made reasonable efforts to assist Father in adjusting the causes and conditions of neglect. "What constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Patricia H.*, 2002-NMCA-061, ¶ 23. On appeal, "our job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *Id.* ¶ 28.

**{4}**    The record indicates that Child was brought into custody in February 2019 when he was approximately seven months old. On April 24, 2019, Father pleaded no contest to the charge of neglect, as defined by NMSA 1978, § 32A-4-2(G)(2) (2018), admitting that he "has unresolved substance abuse, domestic violence, and homelessness issues that negatively impact his ability to properly parent and care for [C]hild." The district court ordered that Child remain in CYFD custody, approved a case plan, and ordered CYFD to "make reasonable efforts to implement the case plan adopted by the [c]ourt."

**{5}**    Father's case plan required, among other things, that Father (1) complete and participate in parenting education classes; (2) secure a stable home that is free of drugs, clean, safe and free of hazards; (3) participate in random drug testing; (4) participate in psychosocial, psychological, domestic violence, anger management, and substance abuse assessments; (5) participate in an outpatient substance abuse group; (6) participate in individual therapy; and (7) attend visits and nonemergency medical appointments with Child.

**{6}**    It appears that CYFD assisted Father by: (1) referring him to Dr. Christopher Alexander for neuropsychological evaluations; (2) referring him for substance abuse, domestic violence, anger management, life skills, and parenting services; (3) referring him for dialectical behavior therapy (DBT) and trauma informed therapy; (4) explaining DBT, the intake process for the DBT provider, and assisting with intake; (5) arranging visits and drug testing, and providing transportation assistance; (6) sending reminders about appointments; (7) taking Father to obtain a substance abuse assessment and a domestic violence assessment, and to obtain a Community Support Worker (CSW) to assist him with his case plan; (8) providing assistance with housing, counseling, and employment applications; (9) helping Father to secure shelter, food, and clothing in a period where he was not residing with Mother; (10) arranging virtual visitation when COVID began and ensuring that Father had video access; and (11) providing a portable washing machine.

**{7}**    Father contends the testimony does not show, to a clear and convincing standard, that CYFD made reasonable efforts to assist Father. However, this Court does not reweigh the evidence on appeal and views the evidence in the light most favorable to the district court's judgment. Reviewing the totality of CYFD's efforts to

assist Father, we conclude clear and convincing evidence supports the district court's conclusion that CYFD made reasonable efforts to alleviate the causes and conditions that brought Child into custody.

**{8}** Father additionally argues that CYFD did not direct reasonable efforts at the "correct causes and conditions or whether . . . Father's ADHD and other mental health issues were unique factors requiring a more tailored approach to Father's treatment plan." The record provides no indication that Father sought assistance from CYFD with the difficulties he was experiencing, nor does it appear that Father argued at the termination hearing that he was denied assistance with these matters. *See Patricia H.*, 2002-NMCA-061, ¶ 28 ("[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law."). We note, however, that Dr. Alexander testified during the termination hearing that Father's testing was typical for ADHD and that he recommended Father participate in a number of services after diagnosing Father with an unspecified neurocognitive disorder, a learning disorder, and with amphetamine and cannabis use disorders. Dr. Alexander's testimony thus indicates that some of the services recommended for Father took his ADHD into account. Additionally we note that "CYFD is only required to make reasonable efforts, not efforts subject to conditions unilaterally imposed by the parent." *Id.* ¶ 27; *see also id.* ¶ 23 (stating "[w]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation [and effort] demonstrated by the parent"). Based on the foregoing, we affirm the district court's conclusion that CYFD made reasonable efforts to assist Father.

## II. Clear and Convincing Evidence Supports the District Court's Conclusion That the Conditions and Causes of Neglect Were Unlikely to Change in the Foreseeable Future

**{9}** Father also argues that clear and convincing evidence was not presented to support the district court's conclusion that the conditions and causes of the neglect were unlikely to change in the foreseeable future. Section 32A-4-28(B)(2). "We have interpreted the term 'foreseeable future' to refer to corrective change within a reasonably definite time or within the near future. We have also noted that in balancing the interests of the parents and children, the [district] court is not required to place the children indefinitely in a legal holding pattern." *Patricia H.*, 2002-NMCA-061, ¶ 34 (internal quotation marks and citations omitted).

**{10}** At trial, CYFD presented evidence that while Father had made progress on some aspects of his treatment plan, he had failed to complete DBT and other therapy, and Father continued to have verbal conflicts with Mother throughout the case. Alexandra Ortiz, parents' permanency planning worker until July 2019, testified that Father's treatment plan included a requirement that he participate in a DBT evaluation. Ortiz stated that Father had a DBT referral to a provider, she discussed DBT with him, and she discussed the intake process with him, but Father stated he wouldn't be able to go because he was looking for a job. An intake coordinator for the DBT provider testified that Father was referred for DBT again in February 2021 but did not complete the intake

process. Maurita Armijo, another permanency planning worker, testified that Father was referred for DBT again in April 2021. The DBT provider testified that Father missed three appointments in July and was discharged. Both Amrijo and the DBT provider testified that DBT takes between nine and twelve months to complete.

**{11}** CYFD called Ashley Martinez, a clinical social worker, to testify about her work with Child, Father, and Mother. Martinez testified that the family was discharged from family counseling after fifteen months due to lack of progress. Multiple witnesses testified that Father failed to attend scheduled appointments, he was disengaged during appointments, and that Father and Mother would engage in verbal altercations and emotionally abuse each other during joint sessions. During a recent visit, Father was observed teasing Child, making Child upset and cry.

**{12}** The district court found that DBT was recommended as necessary to address the issues in this case, but Father had failed to complete DBT despite multiple referrals. The district court also found that domestic violence—verbal conflicts—were an ongoing issue throughout the pendency of the case, and that real concerns about the interpersonal relationship between the parents and their parenting abilities remain. The district court also noted that Father had not made sufficient progress in his ability to parent Child. Based on the foregoing evidence, the district court's conclusion that the conditions and causes of the neglect were unlikely to be alleviated in the foreseeable future appears to be adequately supported.

**{13}** While Father asks for another chance to complete his treatment plan, he has not provided evidence demonstrating that he might be able to safely care for Child within the near future. Indeed, the record shows that at least one important aspect of his treatment plan—DBT—would take an additional nine to twelve months to complete. Although Father did participate in some aspects of his treatment plan, his efforts to comply over the course of two-and-one-half years do not equate to improvement in alleviating the conditions that caused Child's neglect and abuse and do not demonstrate that the district court's conclusion was in error. *See State ex rel. Hum. Servs. Dep't v. Dennis S.*, 1989-NMCA-032, ¶ 7, 108 N.M. 486, 775 P.2d 252 ("When balancing the interests of parents and children, the court is not required to place the children indefinitely in a legal holding pattern, when doing so would be detrimental to the children's interests."); *see also State ex rel. Child., Youth & Fams. Dep't v. Nathan H.*, 2016-NMCA-043, ¶ 41, 370 P.3d 782 (noting that the father's past conduct was relevant to his current parental abilities and foreseeable events in light of evidence that he had not changed his situation in any meaningful way). In light of the evidence presented during the termination proceedings, we conclude that clear and convincing evidence supports the district court's conclusion that the causes and conditions of Child's neglect were unlikely to change in the foreseeable future.

**CONCLUSION**

**{14}** We affirm.

{15}    IT IS SO ORDERED.

MEGAN P. DUFFY, Judge

WE CONCUR:

ZACHARY A. IVES, Judge

KATHERINE A. WRAY, Judge