2000-NMCA-025

997 P.2d 833

**STATE of New Mexico ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**VANESSA C., Respondent–Appellant.**

No. 20181.

Court of Appeals of New Mexico.

Feb. 9, 2000.

Certiorari Denied, No. 26,220, March 22, 2000.

Angela L. Adams, Chief Children's Court Attorney, Roy E. Stephenson, Children's Court Attorney, Santa Fe, for Appellee.

Robert Waterworth, Nancy L. Simmons, Law Offices of Nancy L. Simmons, Albuquerque, for Appellant.

## OPINION

PICKARD, Chief Judge.

{1} Mother appeals the termination of her parental rights to Brittany and Alisha. On appeal, Mother raises five issues: (1) the trial court violated her right to due process by making a finding of futility (finding that additional efforts to engage her in a treatment plan to reunify her with her children would be futile) at an informal judicial review hearing, even though no party asked for a full evidentiary hearing; (2) the trial court's finding of futility was erroneous because it relied on hearsay in violation of Rule 11–802 NMRA 2000, even though Mother did not object to the use of hearsay; (3) there was not clear and convincing evidence to support the trial court's finding of futility; (4) there was not clear and convincing evidence to support the trial court's finding that the causes and conditions of abuse or neglect were unlikely to change in the foreseeable future; and (5) she received ineffective assistance of counsel, in part due to the failures to object noted in the first two issues. We consolidate the issues into three areas for discussion and affirm.

## BACKGROUND AND PROCEDURAL HISTORY

{2} On May 31, 1996, the Children, Youth & Families Department (the Department) took Brittany and Alisha into custody after Mother was arrested on a charge of receiving and transporting a stolen vehicle. Three days later, the Department filed a petition alleging Mother had abused and neglected her children. The trial court held a hearing on the Department's petition on September 6, 1996.

{3} About three weeks later, the trial court entered judgment in which it concluded that Mother's children had been neglected and that they should remain in the custody of the Department. On that same date, the trial court adopted the Department's proposed disposition and treatment plan. Under the treatment plan, Mother had to (1) participate in weekly random drug screening tests, (2) meet with a psychotherapist to address the issues specified in her psychological evaluation and the parenting issues identified by her social worker, (3) maintain regular visitation with her children, and (4) continue in her efforts to obtain suitable housing for her and the children. The Department proposed psychological therapy and drug treatment as part of Mother's treatment plan because she had neglected her children "due to [her history of] substance abuse and domestic violence in California and New Mexico."

{4} In March 1997, the trial court performed the first of several judicial reviews regarding Mother's compliance with the treatment plan. The trial court's review was generally favorable. The trial court found that Mother had made sincere efforts to find a stable place to live, was employed, and had consistently attended her therapy sessions with her psychotherapist. The only unfavorable finding the trial court made was that Mother had not complied with the drug screening part of her plan. The trial court adopted the Department's proposed amended treatment plan to address Mother's continuing drug issues.

{5} In August 1997, the trial court conducted its second judicial review. At the hearing, the Department advised the trial court that Mother had made significant progress toward completing the treatment plan. In particular, the Department informed the trial court that Mother had submitted five of the eight drug tests required of her, only one of which tested positive for amphetamine or methamphetamine; Mother had completed all of her scheduled psychotherapy sessions; Mother had consistently attended her weekly supervised visits with her children; and Mother had worked hard at developing a stable and secure environment for her children. Based in large part on the Department's judicial review report, the trial court returned Mother's children to her physical custody on August 14, 1997.

{6} Two weeks later, Mother's children were returned to the Department's physical custody after Mother was arrested for violating the terms of her probation. As a result of this arrest, Mother's original probation was revoked and a new probation was ordered. During the two-week time period that Mother had physical custody of her chil-

dren, Mother's social worker attended a Citizen Review Board (CRB) hearing. At the hearing, the CRB recommended that the trial court not place Mother's children in her physical custody. The CRB based its opinion on Mother's failure to comply with the terms of her probation, her failure to attend substance abuse counseling, her failure to acknowledge that Brittany had been sexually abused, and the unknowns of her living situation at the time. Mother's social worker also learned that during the two-week period, Brittany had gone home to an empty home on one occasion and that she had been transported to school by two men unknown to her on another occasion.

{7} In March 1998, the Department submitted to the trial court a very unfavorable judicial review report regarding Mother's compliance with the treatment plan. In particular, the Department informed the trial court that in October 1997, Mother had been arrested again for violating the terms of her probation. At about the same time, Mother and her partner were involved in a domestic violence altercation during which Mother bit her partner's forearm three or four times and cut his thumb with a razor. The trial court also learned at the hearing that in December 1997 and January 1998, Mother had taken several drug tests, both for her social worker and for her probation officer. During the course of these two months, Mother's urine tested positive for methamphetamine on at least five occasions. Mother's probation officer stated that when he visited Mother at her house to administer the drug tests, he observed that her house was in bad condition, that it was "gross." The Department stated in its judicial review report that it intended to ask the trial court to enter a finding of futility.

{8} In June 1998, the trial court conducted its third judicial review. At the hearing, the Department formally asked the trial court to enter a finding of futility. In support of its request, the Department reiterated the information contained in its March 1998 judicial review report and, in addition, informed the trial court that Mother had failed to produce documentation regarding the steps she had taken to comply with the treatment plan.

The Department advised the trial court that Mother's unwillingness to produce such documentation obstructed the Department's ability to assess whether Mother was drug free. The Department also produced letters from the children's guardian ad litem, as well as their therapists. The letters indicated that the children loved Mother and that she loved them, but that Mother appeared incapable of recognizing or changing the "aspects of her life (poor choice of domestic partners, drug use, living on the 'edge' of the law) which place her children at serious risk of neglect or abuse."

{9} In her defense, Mother stated, through her attorney, that she had attended drug rehabilitation programs at Turquoise Lodge and the Milagro program. Mother indicated that she had signed forms to release this information to the Department and that she had continued providing urinalysis throughout the course of her probation. Finally, Mother claimed that she continued to visit her children and continued to make efforts to comply with the treatment plan. At the end of the hearing, the trial court found that the Department had made reasonable efforts to reunite Mother and her children and that further efforts to do so would be futile. As a consequence of the trial court's ruling, the Department no longer assisted Mother.

{10} Two months later, in August 1998, the Department filed a motion to terminate Mother's parental rights to Brittany and Alisha. The trial court held the termination hearing in December 1998. The trial court heard a great deal of testimony which either clarified or corroborated the issues that had been addressed at the June judicial review hearing. At the end of the hearing, the trial court terminated Mother's parental rights to Brittany and Alisha. The trial court asked counsel to submit proposed findings of fact and conclusions of law. The Department complied with the trial court's request, while Mother did not. In January 1999, the trial court wholly adopted the Department's proffered findings and conclusions, and it entered an order terminating Mother's parental rights.

## DISCUSSION
## I. & II. DUE PROCESS & HEARSAY

{11} On appeal, Mother claims the trial court's reliance on hearsay evidence and oral argument and its corresponding failure to swear in witnesses and take formal testimony deprived her of a fair hearing at the futility hearing. In support of her claim, Mother relies on *State ex rel. CYFD v. Erika M.*, 1999-NMCA-036, 126 N.M. 760, 975 P.2d 373. In *Erika M.*, the trial court terminated the mother's parental rights by summary judgment. *See id.* ¶ 1. We reversed the trial court's decision because the mother presented evidence that raised genuine issues of material fact, thus defeating summary judgment. *See id.* ¶ 29.

{12} In spite of our holding, we addressed the mother's claim that her due process rights had been violated because the trial court's decision was based exclusively on facts developed at judicial review hearings. *See id.* ¶¶ 26–28. We noted that the termination of parental rights implicates a liberty interest, an interest that must be protected by providing the parent with a fair opportunity to be heard and to present a defense. *See id.* ¶ 26. After discussing the non-adversarial attributes of periodic review hearings, we questioned whether a trial court could rely solely on facts gleaned from such hearings to terminate parental rights. *See id.* ¶ 28.

{13} Mother's reliance on our dicta in *Erika M.* is misplaced. In *Erika M.*, we observed that "[t]ermination hearings are more formal and comply with the rules of court because of the weighty issue—final termination of parental rights—that is being considered at them." *Id.* ¶ 27. That observation is critical to the disposition of the case at bar for two reasons.

{14} First, a trial court's finding of futility does not finally terminate a person's parental rights. A finding of futility does result in the removal of a person's expectation to the Department's reasonable assistance, but it does not consign a parent to failure nor does it resolve the ultimate issue of whether that person's parental rights will be terminated. In the absence of the Department's resources, a parent still has the opportunity to receive assistance on her own and to alleviate the causes and conditions that precipitated the state's intervention into her family arrangement.

{15} For example, in the case at bar, Mother independently sought help from the Turquoise Lodge and Milagro programs. According to Mother, her efforts were so successful that she now deserves to have her children returned to her custody. Mother's opportunity to protect her parental rights after the trial court made its finding of futility argues against the need for any additional procedural safeguards at the judicial review hearing, particularly in the absence of any objection by her. *See Thomas v. Thomas,* 1999-NMCA-135, ¶ 24, 128 N.M. 177, 991 P.2d 7; *see also M.L.B. v. S.L.J.,* 519 U.S. 102, 127–128, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) ("*In contrast to matters modifiable* at the parties' will or *based on changed circumstances,* termination adjudications involve the awesome authority of the State '*to destroy permanently all legal recognition of the parental relationship.*' ") (citations omitted and emphasis added); *cf. State ex rel. CYFD v. Stella P.,* 1999-NMCA-100, ¶ 21, 127 N.M. 699, 986 P.2d 495 (holding that, even in the absence of any objection, trial court has a duty to inquire as to whether a parent is intentionally waiving the entire right to contest termination proceedings).

{16} Second, in *Erika M.*, we were reviewing the trial court's decision to terminate parental rights on the Department's motion for summary judgment. Due to the fact that the trial court granted summary judgment based exclusively on judicial review reports, we observed that the mother not only lacked the opportunity to contest the reports when they were first adopted, but more importantly, she also lacked the opportunity to contest the reports at a termination hearing. *See id.* ¶¶ 24, 29. We noted that the mother "had no incentive to contest the Department's reports when they were used … as progress reports, rather than in support of termination." *Id.* ¶ 28. As a consequence, we declined to hold the mother to the judicial review reports, especially on summary judgment. *See id.* ¶¶ 28, 29.

{17} In the case at bar, Mother knew far in advance of the futility hearing that the Department intended to seek a finding of futility based on the information contained in its judicial review reports. The Department put Mother on notice as early as March 1998 that it intended to ask the trial court to enter a finding of futility. This advance notice not only provided Mother with at least three months to prepare for the futility hearing, but it also provided her with every incentive to challenge any untoward allegations contained in the March 1998 and June 1998 judicial review reports as well.

{18} Most critically, Mother had the opportunity to contest the judicial review reports at the futility hearing and she did so, almost exclusively through nontestimonial documents of her own. Mother appeared with her attorney at the June 1998 futility hearing. The attorneys for each side made presentations to the trial court. The trial court did not swear in any witnesses and no formal testimony was taken. Instead, the Department, along with the children's guardian ad litem, offered into evidence, and then reiterated to the trial court, the information contained in the March 1998 and June 1998 judicial review reports. Mother's attorney presented letters that Mother had attended drug rehabilitation and parenting training at the Turquoise Lodge and Milagro programs. Attorneys for both sides also offered their own observations about Mother's case, the steps she had taken or failed to take to comply with the treatment plan, and her chances of becoming an adequate parent for Brittany and Alisha in the foreseeable future. Mother did not object to the procedural aspects of these proceedings in any way, either during the futility hearing or during the final termination hearing. We believe Mother's advance notice and her opportunity to contest the validity of the previous judicial review reports significantly reduced her interest in having additional procedural safeguards.

{19} Upon balancing the factors herein, we conclude that Mother's right to due process was not violated through the procedures used at the trial court level. Mother had adequate notice of the issue to be resolved, as well as the opportunity to prepare and present a case on that issue. Moreover, the trial court based its decision on matters that did not appear to require live testimony. Put more succinctly: either Mother tested positive for drugs or she did not, either Mother submitted documentation of her compliance with the treatment plan or she did not, either Mother was arrested for domestic violence or she was not, and either Mother was employed or she was not. It is neither coincidental nor inconsequential that, as Mother points out, the testimony at the termination hearing "clarified or corroborated many of the issues that arose at the [futility hearing]." *See Mathews v. Eldridge*, 424 U.S. 319, 345, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (concluding that oral testimony is unnecessary when an assessment can be made through written documents).

{20} We also conclude that the trial court's reliance on hearsay evidence does not violate Rule 11–802. According to Rule 11–802, "[h]earsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute." The trial court made its finding of futility at a judicial review hearing. Judicial review hearings, which are governed by NMSA 1978, § 32A–4–25 (1999), are not subject to the rules of evidence. *See* § 32A–4–25(E). We hold that the trial court did not err by basing its finding of futility made at the judicial review hearing on hearsay evidence.

{21} In view of the fundamental interests that are at stake in termination of parental rights cases, we recommend that in the future, if the real potential for an adverse ruling is in the offing at a judicial review hearing, and the adverse ruling might be avoided through the exercise of certain procedural safeguards, counsel should be prepared to present evidence and cross-examine witnesses. Although the rules of evidence do not necessarily apply in judicial review hearings, the hallmarks of the adversarial process—the presentation of evidence and the cross-examination of witnesses—are both contemplated in and permitted by our statutes. *See* § 32A–4–25(D) ("At any [periodic] review hearing ..., the child's guardian ad litem and all parties given notice ... shall

have the opportunity to present evidence and to cross-examine witnesses."), § 32A–4–25(E) ("The Rules of Evidence shall not apply to hearings held pursuant to this section."). All Mother had to do was object if she were truly concerned that she was in danger of losing rights granted by statute or constitution. We answer Mother's ineffective assistance issue below.

## III. & IV. SUFFICIENCY OF EVIDENCE

{22} Mother claims that the trial court had insufficient evidence to conclude, both at the futility hearing and at the termination hearing, that she had done nothing to comply with the treatment plan and thus erred in finding futility. Mother also claims the trial court had insufficient evidence to conclude at the termination hearing that the causes and conditions of neglect which rendered her unable to properly care for her children were unlikely to change in the foreseeable future. As both of these claims concern the sufficiency of the evidence to support the trial court's decision to terminate Mother's parental rights, we consolidate them for consideration under the standard of review applicable at termination proceedings.

{23} A person's parental rights shall be terminated upon a showing that her children have been neglected, and the causes of the neglect are unlikely to change in the foreseeable future despite reasonable efforts by the Department to assist the parent in adjusting the conditions that rendered her unable to properly care for her children. *See* NMSA 1978, § 32A–4–28(B)(2) (1999). In determining whether to terminate parental rights, the trial court must "give primary consideration to the physical, mental and emotional welfare and needs of the child[ren], including the likelihood of the child[ren] being adopted if parental rights are terminated." Section 32A–4–28(A).

{24} The standard of proof in cases involving the termination of parental rights is clear and convincing evidence. *See* NMSA 1978, § 32A–4–29(J) (1999); *In re Termination of Parental Rights of Eventyr J.*, 120 N.M. 463, 466, 902 P.2d 1066, 1069 (Ct.App. 1995). However, notwithstanding this standard of proof, this Court will not reweigh the

evidence on appeal. *See In re R.W.*, 108 N.M. 332, 335, 772 P.2d 366, 369 (Ct.App. 1989). Instead, we must view it in a light most favorable to affirmance. *See Eventyr J.*, 120 N.M. at 466, 902 P.2d at 1069. Nor do we assess the credibility of the witnesses, deferring instead to the conclusions of the trier of fact. *See State v. Tisthammer*, 1998–NMCA–115, ¶ 25, 126 N.M. 52, 966 P.2d 760. We will not substitute our judgment for that of the trial court as to any factual matter. *See In re Wayne R.N.*, 107 N.M. 341, 345, 757 P.2d 1333, 1337 (Ct.App.1988). Our standard of review is therefore whether, viewing the evidence in a light most favorable to affirming the termination of Mother's parental rights, the trial court could properly determine that the clear and convincing standard was met. *See Eventyr J.*, 120 N.M. at 466, 902 P.2d at 1069.

{25} At the termination hearing, the trial court found that Mother "has continually neglected the children[ ] by failing to complete and progress in all of her substance abuse treatment and by continuing to place herself in situations involving domestic violence and suspected criminal activity[.]" Mother claims the trial court "had insufficient evidence to say that she had made *no* efforts in complying with the treatment plan and therefore had insufficient evidence" to find continuous neglect.

{26} As our quote of the trial court's finding of neglect indicates, the trial court did not find that Mother had made *no* efforts to comply with the treatment plan. Rather, the trial court found that Mother had failed to comply with several key elements of her treatment plan, including her need to avoid drugs, domestic violence, and other criminal involvement. The trial court determined that Mother's failure to comply with the treatment plan caused her to neglect Brittany and Alisha. The evidence in the record supports the trial court's finding of neglect.

{27} As Mother concedes, the trial court heard testimony at the termination hearing that Mother was arrested in October 1997 for the domestic violence incident in which she bit her partner's arm and cut his thumb with a razor; Mother submitted seven urinalyses

positive for methamphetamines in December 1997 and January 1998; Mother failed to conform to probation requirements, resulting in an unfavorable discharge; Mother failed to provide the Department with any releases regarding her participation in the Turquoise Lodge and Milagro programs; Mother failed to conform to the rules at Turquoise Lodge; Mother failed to show that she participated in individual therapy after the Department removed its resources and after leaving Turquoise Lodge; Mother tested positive for drugs when she gave birth to her daughter Jasmine in July 1998; Mother continued to maintain that she did not need to participate in any aftercare programs; and Mother was unemployed and without a dwelling of her own.

{28} Viewing the Department's evidence in a light most favorable to affirming the trial court's finding of on-going neglect, we hold that the trial court could properly determine that the clear and convincing standard was met. *See Eventyr J.*, 120 N.M. at 466, 902 P.2d at 1069. We reject Mother's claim that the trial court had insufficient evidence of on-going neglect. We acknowledge that Mother presented evidence that her August 1998 arrest was based on a mistaken probation matter and that she signed and provided releases for information and independently sought help by participating in the Turquoise Lodge and Milagro programs. We also acknowledge that Mother presented evidence that she continued to work on family skills with the Department through its Los Pasos Family Preservation Services (Los Pasos) program in connection with her daughter Jasmine and that her social worker at Los Pasos did not have any concerns about whether Mother was still using drugs. However, Mother's claim essentially requests that we reweigh conflicting evidence in her favor. We cannot reweigh the evidence. Conflicts in testimony are matters for the trial court to resolve. *See id.*

{29} Mother also claims the trial court had insufficient evidence to say that she had "made *no* efforts in complying with the treatment plan" and therefore had insufficient evidence to make a finding of futility at the judicial review hearing. This is essentially the same claim Mother raised in the context of the trial court's finding of neglect. As we stated above, the trial court did not base its decision on the erroneous finding that Mother made no efforts to comply with the treatment plan. Instead, the trial court found that Mother had not done enough to comply with the treatment plan. Based on this finding, the trial court concluded that it would be futile for the Department to make further efforts to assist Mother. After two years with limited or no long-term or sustained progress being made, we believe the trial court could find that there was clear and convincing evidence that the causes and conditions of neglect would not change in the foreseeable future. *See id.*

{30} Mother acknowledges that if the trial court's futility finding at the judicial review hearing is legitimate, then its futility finding at the termination hearing is also legitimate. Mother concedes this point because the trial court had virtually the same evidence before it at the futility hearing that it had before it at the termination hearing, although at the termination hearing, it was in such form that it was subject to cross-examination and the other formal rules of evidence. We held that the trial court's first futility finding was legitimate and, accordingly, we now hold that its second finding regarding change in the foreseeable future was also legitimate.

## V. INEFFECTIVE ASSISTANCE

{31} Mother contends she received ineffective assistance of counsel because (1) her trial attorney failed to submit proposed findings of fact and conclusions of law, thus preventing this Court from reviewing her sufficiency of the evidence arguments, and (2) her trial attorney performed ineffectively in connection with her failure to object to the absence of admissible evidence at the judicial review hearing and her failure to object to the trial court's use of the finding of futility at the termination hearing.

{32} A parent has the right to effective counsel in termination cases. *See State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999–NMCA–009, ¶ 20, 126 N.M. 664, 974 P.2d 158. In *Tammy S.*, 1999–

NMCA–009, ¶ 20, 126 N.M. 664, 974 P.2d 158, we recognized that "the majority of jurisdictions utilize the same standard for effective assistance in [termination] cases as in criminal cases, and we utilized the criminal standard for the purposes of [*In re Termination of Parental Rights of James W.H.*, 115 N.M. 256, 259, 849 P.2d 1079, 1082 (Ct. App.1993) ]." We did not reach the issue of what the standard for effective assistance of counsel should be in *Tammy S.* because counsel's performance was inadequate regardless of the standard. *See id.* ¶ 20. In contrast, in *In re James W.H.*, we concluded that even if the criminal standard was used, the claim lacked merit. *See id.* at 259, 849 P.2d at 1082. The same is true in this case.

{33} "In reviewing a claim of ineffective assistance of counsel, we look at the proceedings as a whole. Litigants alleging ineffective assistance of counsel have the burden of establishing the claim and are required to show not only that trial counsel was ineffective, but that trial counsel's inadequacies prejudiced them." *State ex rel. Children, Youth & Families Dep't v. David F.*, 121 N.M. 341, 348, 911 P.2d 235, 242 (Ct.App. 1995) (citation omitted). The party asserting ineffective assistance must prove both prongs of the test. *See State v. Hester*, 1999–NMSC–020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof is upon the party claiming ineffective assistance. *See State v. Baca*, 1997–NMSC–045, ¶¶ 20–21, 124 N.M. 55, 946 P.2d 1066. Failure to prove either prong of the test is fatal to a claim of ineffective assistance. *See id.* In the case at bar, we hold that Mother did not receive ineffective assistance of counsel.

{34} First, her trial attorney's failure to submit proposed findings of fact and conclusions of law has not prevented us from reviewing her sufficiency of the evidence arguments because her trial attorney called the trial court's attention to the alleged insufficiency of the evidence. *See Cockrell v. Cockrell*, 117 N.M. 321, 324, 871 P.2d 977, 980 (1994) (ruling that evidence may not be reviewed on appeal when the party seeking review has failed to submit requested findings of fact and conclusions of law and the appellant has otherwise failed to object to the findings or call the trial court's attention to the insufficiency of the evidence).

{35} Second, her trial attorney's alleged failure to object to the trial court's use of the finding of futility did not render her attorney's assistance ineffective, because the trial court made its findings based on the testimony given and the evidence presented at the termination hearing. The trial court did not rely upon the futility hearing itself. *See Eventyr J.*, 120 N.M. at 473, 902 P.2d at 1076 (ruling that a parent was not deprived of her due process rights by the trial court taking judicial notice of prior adjudication because it based its decision on the evidence presented at termination hearing rather than relying upon prior adjudication).

{36} We deem it important to note that this is not a case in which the earlier finding of futility prejudiced Mother in any way, contrary to Mother's arguments. Her arguments may have merit in the abstract or in another case, but they do not have merit under the facts of this case. First, Mother has made no attempt to show that the result of the judicial review hearing would have been any different had she insisted on her right to present admissible evidence and cross-examine the Department's evidence. Thus, her attorney's reliance on a presentation similar to that of the Department at the judicial review hearing may well have been an adequate strategy. *See State v. Cooper*, 1998–NMCA–180, ¶ 11, 126 N.M. 500, 972 P.2d 1 (holding that reviewing court will not second guess strategy and tactics). Second, the motion to terminate parental rights was filed shortly after the finding of futility. Third, the Department did not rely on the time period following the finding of futility to show that the causes and conditions of the abuse and neglect would not change despite the Department's reasonable efforts. As Mother acknowledges, the Department relied on the same events at the termination hearing as it did at the judicial review hearing. Thus, Mother's concern that a premature finding of futility could unduly prejudice a

parent, while potentially meritorious in the abstract, has no application to the facts of this case.

## CONCLUSION

{37} We affirm.

{38} **IT IS SO ORDERED.**

BOSSON and BUSTAMANTE, JJ., concur.