This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37954

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH & FAMILIES**
**DEPARTMENT,**

 Petitioner-Appellee,

v.

**RUEBEN D.,**

 Respondent-Appellant,

and

**LORYANN R.,**

 Respondent,

**IN THE MATTER OF DAMIEN D.R.,**

 Child.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

For Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Sherrie L. Trescott
Rio Rancho, NM

Guardian Ad Litem

## DECISION

**MEDINA, Judge.**

**{1}** Rueben D. (Father) appeals the termination of his parental rights to Damien D. (Child). For the reasons that follow, we affirm. We set out only the pertinent facts and law in connection with the issues analyzed because the parties are familiar with the facts and procedural posture of this case and because this is a non-precedential expedited bench decision. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

## BACKGROUND

**{2}** On June 19, 2014, the Children, Youth, and Families Department (CYFD) filed a petition alleging Child, approximately seven-and-a-half years old, was abused and neglected by Father. The district court entered an adjudicatory judgment finding that Child was an abused and neglected child, pursuant to NMSA 1978, Section 32A-4-2(B)(1), (B)(2) and (E)(2) (2009, amended 2018).[1] In a dispositional order, the district court adopted CYFD's proposed treatment plan, which required Father to, among other things, participate in visitations with Child, take random drug tests, participate in the family dependency drug court program, and follow the recommendations as a result of a psychological evaluation and domestic violence assessment. On August 3, 2015, CYFD moved to terminate Father's parental rights. As grounds therefore, CYFD alleged that the causes and conditions that brought the Child into CYFD's custody are unlikely to change in the foreseeable future despite CYFD's reasonable efforts to assist Father in adjusting the conditions which rendered him unable to properly care for the child. Specifically, CYFD alleged Father was unable or unwilling to utilize its services. The district court held the termination of parental rights evidentiary hearing over the course of three days.

**{3}** Despite testing positive for methamphetamine on the first and second days of the evidentiary hearing, Father was able to testify about his attempts to comply with his treatment plan. Although Father agreed to call CYFD daily to see whether he was required to take a drug test, he admitted that he never called in, despite knowing that missed tests would be treated as positive. Nor did Father show up for his intake evaluation at the family dependency drug court program. Instead, Father chose to attend a drug rehabilitation program at Villa de Esperanza, which was not affiliated with

---

1The definition of neglect is now amended at NMSA 1978, Section 32A-4-2(G)(2) (2018).

CYFD, in October 2015. Father testified that he completed a twenty-eight-day program at Villa de Esperanza, which included parenting classes and substance abuse treatment. While Father stayed sober for a period of time after leaving Villa de Esperanza, Father admitted that he eventually started using drugs again.

{4}    According to Father, he began counseling at Villa de Esperanza sometime in 2014, and continued to see his counselor twice a week until about August or September 2016 because Father no longer felt he was making any progress. Father's counselor at Villa de Esperanza was qualified to do "most, if not everything" that CYFD's treatment plan required, including counseling on parenting, domestic violence, and substance abuse. While CYFD referred Father to another program for a domestic violence assessment, Father did not go because he did not want CYFD to have any influence on his counseling. Additionally, although Father went to one family therapy appointment with a CYFD-affiliated counselor, Father testified that he did not return for a scheduled follow-up because he was seeing his counselor at Villa de Esperanza and believed that CYFD was influencing the counselor. Father also testified that he tried to get Child to go to family therapy with his counselor at Villa de Esperanza, but CYFD did not approve.

{5}    Several individuals from CYFD testified at the evidentiary hearing. Dr. Michael Rodriguez, a licensed psychologist, testified that he was hired by CYFD to perform a psychological evaluation on Father. As a result of the evaluation, Dr. Rodriguez recommended that Father enroll in outpatient substance abuse treatment, individual psychotherapy to help him understand how his lifestyle choices impacted his family, and parenting training to help him reframe his belief that parenting was about punishing—as opposed to teaching—Child. Additionally, Beverly Michael, a licensed clinical social worker, testified about her interactions with Father and Child during therapy. Ms. Michael met with Father to assess him for a family reunification program, which included family therapy. However, Father only attended one family therapy session and had to excuse himself after becoming frustrated. In Ms. Michael's sessions with Child, Child reported witnessing Father beat and choke Mother and confided that he would get so scared he would hide in a closet and pile things on top of himself. Child also reported seeing his parents use drugs and smoke something out of a "big glass pipe." Child did not like being with his parents when they were under the influence. Child believed that he would be "at risk" if he were returned to either parent and asked Ms. Michael, "[W]ill you please tell the judge that I want to be adopted?" Ms. Michael agreed that the safety concerns which brought Child into CYFD custody had not been adequately addressed.

{6}    Rebecca Sandoval, a county office manager (and former placement and permanency planning supervisor) with CYFD, testified about Father's treatment. In Ms. Sandoval's opinion, Father had not completed enough of his treatment plan to have Child returned to him. To Ms. Sandoval's knowledge, Father had not completed any parenting or domestic violence program, despite CYFD referring him to such programs. Nor had Father completed any of Dr. Rodriguez's recommendations. Additionally, excluding the drug tests that Father took at the evidentiary hearings, Father had only taken four drug tests since 2014. Of the four tests that CYFD administered between June 20, 2014 and September 24, 2015, only one came back negative; the other three

came back positive for either methamphetamine, marijuana, or both. Father also refused to take required drug tests after he completed the drug rehabilitation program at Villa de Esperanza in October 2015. Additionally, Father stopped attending visitations with Child in February 2016 when the district court ordered CYFD to drug test Father each time he visited Child. Given Father's lack of progress in treatment and Child's need for permanency after being in CYFD custody for over three years, CYFD recommended terminating Father's parental rights.

{7}    Following the third day of the evidentiary hearing on May 24, 2017, the district court concluded that Father was unlikely to change the causes and conditions of his neglect and abuse of Child in the foreseeable future despite CYFD's reasonable efforts to assist him, finding the following:

[1.    Father] appeared in [c]ourt on at least two occasions testing positive for illegal drug use, with knowledge that his parental rights were at stake—father was honest about such drug use and made the decision to use illegal drugs in the presence of the [c]ourt during critical hearings regarding his parental rights instead of showing serious efforts to protect his parental rights;

[2.]    Father conducted himself in such a manner and made numerous excuses regarding seeing [C]hild over the past three years that he could not be found by CYFD, that he failed to engage in other than very meager efforts to see . . . Child, and failed to communicate with . . . Child or provide for . . . Child's support for extended periods of time, the last period lasting at least two years;

. . . .

[3.]    Father went to some programs offered by CYFD and very early in treatment . . . got so angry that he had to be asked to leave a session; he failed to complete almost all offered programs, therapies and counseling;

[4.]    Father never attended the offered [c]ourt drug treatment program;

[5.]    Father did not participate in domestic violence programs offered because he was no longer with . . . Mother even though the original separation between himself and . . . Child was due in part to violence between him and [C]hild;

[6.]    Extensive drug use by Father appears as a reason why . . . Child was removed and Father has done nothing, despite CYFD efforts, to participate in drug abuse programs and has appeared in [c]ourt, with knowledge of the possible consequences, having signs of the use of [methamphetamine] by his own admission after almost three years since [C]hild was removed from his custody[.]

*See* NMSA 1978, § 32A-4-28(B)(2) (2005). Additionally, given the evidence presented about Father's lack of contact with Child, the district court found, sua sponte, that there was clear and convincing evidence that Father presumptively abandoned Child. *See* § 32A-4-28(B)(3). Consequently, the district court terminated Father's parental rights. This appeal followed.

## DISCUSSION

**{8}** Father argues there was insufficient evidence to support the district court's finding that CYFD made reasonable efforts to assist him in ameliorating the causes of his abuse and neglect of Child. Father also contends there is insufficient evidence that he would not be able to change those causes within the foreseeable future. Additionally, Father argues the district court erred in finding that he presumptively abandoned Child, pursuant to Section 32A-4-28(B)(3). Construing the evidence in the light most favorable to the judgment, we conclude that clear and convincing evidence supported the district court's termination of Father's parental rights, pursuant to Section 32A-4-28(B)(2). Consequently, we need not address whether the district court also properly terminated Father's parental rights under Section 32A-4-28(B)(3).

### Standard of Review

**{9}** "The standard of proof [for] termination of parental rights is clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. "Clear and convincing evidence is . . . evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted). This Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *Vanessa C.*, 2000-NMCA-025, ¶ 24. "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859.

### Reasonable Efforts

**{10}** Under Section 32A-4-28(B)(2), CYFD must demonstrate that it made reasonable efforts to assist the parent in adjusting the conditions and causes that rendered him unable to properly care for an abused or neglected child. We consider the totality of the circumstances when reviewing the reasonableness of CYFD's efforts. *State ex rel.*

*Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 38, 421 P.3d 814. CYFD's "efforts should be directed to assist the parent in remedying the conditions and causes of neglect and abuse." *Id.* ¶ 41. "Efforts to assist a parent may include individual, group, and family counseling, substance abuse treatment, mental health services, transportation, child care, and other therapeutic services." *Id.* (internal quotation marks and citation omitted). "[W]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Id.* (internal quotation marks and citation omitted). "[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *Patricia H.*, 2002-NMCA-061, ¶ 28.

**{11}**     As the testimony outlined above demonstrates, CYFD made efforts to help Father remedy the conditions and causes that rendered him unable to properly care for Child. CYFD hired a psychologist to perform a psychological evaluation on Father and recommend various treatments. CYFD facilitated visitations with Child until Father stopped attending them. CYFD arranged family therapy sessions with Father and Child, although Father only attended one. CYFD referred Father to relevant services, including domestic violence classes, parenting classes, family therapy, and family drug dependency court.

**{12}**     Father argues that CYFD's efforts were not reasonable because it did not support Father's decision to pursue his own treatment plan with Villa de Esperanza. As a general matter, we agree that CYFD should explore alternative forms of treatment that satisfy both the parent and CYFD in its efforts to help parents ameliorate the causes and conditions of abuse and neglect. However, as our Court has stated, "[O]ur job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law." *Patricia H.*, 2002-NMCA-061, ¶ 28. As detailed above, CYFD referred Father to various resources throughout the case. While there was no evidence that CYFD attempted to coordinate services through Villa de Esperanza, there was also no evidence that CYFD prevented Father from pursuing his independent course of treatment there. That CYFD did not coordinate treatment through an independent organization in lieu of CYFD's preferred providers, standing alone, does not render its efforts unreasonable. Importantly, there was little to no testimony about the quality of services that Villa de Esperanza offered or how they compared to the services that CYFD recommended as part of Father's treatment plan. Father was the only witness to testify about the Villa de Esperanza program and the qualifications of his counselor there. However, the district court was not required to credit Father's testimony, especially given Father's interest in the outcome of the hearing. *See Vanessa C.*, 2000-NMCA-025, ¶ 24 ("Nor do we assess the credibility of the witnesses, deferring instead to the conclusions of the trier of fact."); *cf. State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 ("The fact[-]finder may reject [the] defendant's version of the incident."). Without more evidence demonstrating that the Villa de Esperanza program and counseling was generally equivalent to the CYFD-affiliated programs, we cannot say that CYFD's

decision not to coordinate treatment through an independent program was unreasonable.

**{13}**    Father also faults CYFD's decision to condition his visitations with Child on passing a drug test. Specifically, Father claims that this decision lacked any therapeutic value and was simply a form of punishment for drug use that resulted in his loss of the ability to learn parenting skills necessary for reunification. We reject Father's attempt to characterize this arrangement as punishment for drug use. Rather, it was a measure implemented to safeguard Child's welfare. As CYFD points out, this requirement was the result of the district court's order, which it issued after Father tested positive for drugs before a hearing on February 10, 2016. Additionally, Child had reported to Ms. Michael that he had seen his parents use drugs, and he did not like being with them when they were under the influence. In light of the district court's statutory duty to ensure that "the child's health and safety" are "the paramount concern[,]" *see* NMSA 1978, § 32A-1-3(A) (2009), we fail to see how preventing Child from being exposed to Father while he was possibly under the influence of drugs was inappropriate. Moreover, while we empathize with Father's struggles with addiction, Father retained complete control over whether he could visit Child (i.e., by refraining from using illegal drugs for at least a certain amount of time before each visitation). "That [Father] did not fully participate in or cooperate with the services does not render [CYFD]'s efforts unreasonable." *State ex rel. Children, Youth & Families Dep't v. Laura J.*, 2013-NMCA-057, ¶ 39, 301 P.3d 860. Given the evidence of CYFD's efforts, we conclude that substantial evidence of a clear and convincing nature supported the district court's finding that CYFD made reasonable efforts to assist Father in adjusting the conditions and causes that rendered him unable to properly care for Child.

**Foreseeable Future**

**{14}**    "Before parental rights may be terminated, CYFD must [also] demonstrate that the causes of the neglect or abuse are unlikely to change in the foreseeable future[.]"*Patricia H.*, 2002-NMCA-061, ¶ 32; *see* § 32A-4-28(B)(2). "We have interpreted the term 'foreseeable future' to refer to corrective change within a reasonably definite time or within the near future." *Id.* ¶ 34 (internal quotation marks and citation omitted). Viewing the evidence in the light most favorable to the judgment, we conclude there was substantial evidence of a clear and convincing nature that the causes of Father's abuse and neglect of Child were unlikely to change in the foreseeable future.

**{15}**    Father contends that CYFD failed to present clear and convincing evidence that the causes and conditions of the abuse and neglect, namely Father's physically abusive behavior, drug use, and issues with domestic violence, were unlikely to change in the foreseeable future. We disagree. As the district court found, by the time of the last day of the evidentiary hearing, Father had not meaningfully engaged in any services required by his treatment plan. Father failed to complete the parenting and domestic violence programs required by his treatment plan. Additionally, although Father completed a drug rehabilitation program at Villa de Esperanza in October 2015, he never attended the required family dependency drug court program. Even assuming,

*arguendo*, that Father's treatment at Villa de Esperanza was an adequate alternative to the family dependency drug court program, Father attended the program for less than a month and admitted to using drugs afterward. Father also failed to take required drug tests on numerous occasions. Indeed, when CYFD began requiring Father to take drug screenings before visiting Child in February 2016, Father stopped attending visitations—another requirement of his treatment plan. The times that Father did take the drug screenings, he often tested positive for drugs, including testing positive for methamphetamine on the first and second days of the termination of parental rights evidentiary hearing—*over two years after CYFD took custody of Child*. Given this evidence, we conclude that the district court's finding that Father was unlikely to change the causes and conditions of his neglect and abuse of Child in the foreseeable future was supported by substantial evidence. *See In re Termination of Parental Rights of Reuben & Elizabeth O.*, 1986-NMCA-031, ¶ 36, 104 N.M. 644, 725 P.2d 844 ("[I]n balancing the interests of the parents and children, the court is not required to place the children indefinitely in a legal holding pattern. To do so would force the children to wait for the uncertain possibility that the natural parents, despite their persistent and long-standing disregard of the children's interest, may remedy past faults which have rendered the children neglected."). Accordingly, we affirm the district court's termination of Father's parental rights to Child, pursuant to Section 32A-4-28(B)(2).

**CONCLUSION**

**{16}**    For the foregoing reasons, we affirm the district court's termination of Father's parental rights to Child.

**{17}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JULIE J. VARGAS, Judge**