This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42279**

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**

Petitioner-Appellee,

v.

**MICHAEL E.,**

Respondent-Appellant,

**IN THE MATTER OF MALACHI E., and JEREMIAH F., Children.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Court Judge**

NM Office of Broadband Access and Expansion
Kelly P. O'Neill
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

575 Law Group LLC
Eileen P. Riordan
Carlsbad, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Father appeals from an order of the district court terminating his parental rights to Children. We issued a notice of proposed summary disposition proposing to affirm, and Father has responded with a timely memorandum in opposition, which we have duly considered. We remain unpersuaded that our initial proposed disposition was incorrect, and we therefore affirm.

**{2}** Father continues to assert that the evidence was insufficient to support the district court's termination order. [MIO 7-16] In termination proceedings, the standard of proof is clear and convincing evidence. *State ex rel. Child., Youth & Fams. Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778. Clear and convincing evidence means "evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *Id.* (alteration, internal quotation marks, and citation omitted). We examine the evidence in the light most favorable to whether the district court, as the trier of fact, could appropriately conclude that the clear and convincing evidence standard was satisfied. *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 3, 120 N.M. 463, 902 P.2d 1066.

**{3}** The district court terminated Father's parental rights under two separate statutory provisions of the Abuse and Neglect Act, NMSA 1978, §§ 32A-4-1 to -35 (1993, as amended through 2025). *See* § 32A-4-28(B)(3) (providing that the court shall terminate parental rights if certain conditions exist that create a presumption of abandonment that has not been rebutted); § 32A-4-28(B)(2) (providing that the court shall terminate parental rights if the child has been neglected and the causes and conditions of the neglect were unlikely to change in the foreseeable future despite the Children, Youth & Families Department's (the Department) reasonable efforts to assist the parent).

**{4}** In our notice of proposed summary disposition, we proposed to affirm the termination of Father's parental rights under Section 32A-4-28(B)(3), which provides that the district court shall terminate parental rights based on presumptive abandonment if:

> (3) the child has been placed in the care of others, including care by other relatives, either by a court order or otherwise and the following conditions exist:
>
> (a) the child has lived in the home of others for an extended period of time;
>
> (b) the parent-child relationship has disintegrated;
>
> (c) a psychological parent-child relationship has developed between the substitute family and the child;

   (d)  if the court deems the child of sufficient capacity to express a preference, the child no longer prefers to live with the natural parent;

   (e)  the substitute family desires to adopt the child; and

   (f)  a presumption of abandonment created by the conditions described in Subparagraphs (a) through (e) of this paragraph has not been rebutted.

*Id.*

**{5}** The district court's findings in support of termination under Section 32A-4-28(B)(3) recite that Children were placed in the care of their maternal uncle, Cesar Franco, in March 2022 when they were taken into custody by the Department and have been in his care ever since. [D-503-JQ-2022-00002, March 6, 2025 Order at 2-4] At the time of the termination hearing, Children had been living in Cesar's home for two years, along with their older brother, whom Cesar had adopted. [*Id.*] The district court further found that the parent-child relationship had disintegrated between Father and Children. Children did not recognize Father, and he had not been a part of their lives prior to his incarceration or provided any type of support for Children. [*Id.*] During his incarceration, Father did not keep in contact with Children. [*Id.*] Additionally, a parent-child relationship exists between Children and Cesar. Children believe that Cesar is their father, and he desires to adopt them. [*Id.*] *See State ex rel. Child., Youth & Fams. Dep't v. Hector C.*, 2008-NMCA-079, ¶¶ 30-35, 144 N.M. 222, 185 P.3d 1072 (determining that the evidence was sufficient to support termination based on presumptive abandonment where the father left the family before the younger child was born, did not stay in contact with the children prior to being served with the abuse and neglect petition, wrote to the children minimally while incarcerated, visits had to be stopped with the children because they were harmful, and the children were bonded with their foster parents).

**{6}** In his memorandum in opposition, Father argues that he attempted to stay in touch with Children before they were taken into CYFD custody, and he financially supported them when he could. [MIO 10] Father further contends that CYFD's claims that he did not keep in touch with Children during his incarceration are false because Father tried to write to Children and send them pictures, but he got no support from CYFD for these efforts in return. [MIO 10] Father therefore argues that the evidence established that he did everything he could to keep in contact with Children, not that he abandoned them, and that CYFD did everything it could to intentionally isolate Children from Father. [MIO 11]

**{7}** We note, however, that the district court was not required to credit Father's testimony, and on appeal we do not substitute our judgment for that of the district court on matters of credibility. *See State ex rel. Child., Youth & Fams. Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833 (stating that we do not reweigh the evidence or substitute our judgment for that of the district court on factual matters or on matters of credibility); *see also State ex rel. Child., Youth & Fams. Dep't v. Cosme V.*,

2009-NMCA-094, ¶ 19, 146 N.M. 809, 215 P.3d 747 ("The district court is in a better position to assess the testimony and credibility of witnesses, and our scope of review is a narrow one." (internal quotation marks and citation omitted)). Rather, "[o]ur role is to determine whether the fact[-]finder could properly conclude that the proof requirement below was met." *State ex rel. Child., Youth & Fams. Dep't v. Elizabeth H*., 2002-NMCA-061, ¶ 21, 132 N.M. 299, 47 P.3d 859. In this case, Father has not established on appeal that the district court's findings were not supported by competent evidence at the termination hearing. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings of the district court, and the party claiming error bears the burden of showing such error).

**{8}**     Father also continues to argue that the district court's determination that he abandoned Children was based solely upon the fact of his involuntary incarceration, and is therefore fundamentally unfair. [MIO 10-11] We recognize that a finding of abandonment cannot be premised solely on a parent's incarcerations. *See* § 32A-4-28(D) (stating that CYFD may not petition to terminate parental rights based solely on a parent's incarceration). However, as described, the district court's findings establish that Father did not have a relationship with M.E. or provide support to Children prior to his incarceration, and he did not contact Children or maintain contact with CYFD during his incarceration. [D-503-JQ-2022-00002, March 6, 2025 Order at 2-4] Accordingly, we reject Father's assertion that the district court based its finding of abandonment solely on his incarceration status. *See Hector C.*, 2008-NMCA-079, ¶ 35 (rejecting a similar argument where the father did not have a relationship with the children prior to incarceration, wrote minimally to the children during his incarceration, and did not engage in efforts to have the children placed with appropriate relatives).

**{9}**     For these reasons, and those set out in our notice of proposed summary disposition, we reject Father's assertions of error and affirm. *See State ex rel. Child., Youth & Fams. Dep't v. Christopher B.*, 2014-NMCA-016, ¶ 12, 316 P.3d 918 (stating that multiple factors may indicate abandonment, including an absence of financial support and purposely declining opportunities to remain in contact with the child); *In re Adoption of Doe*, 1982-NMCA-183, ¶ 26 ("Abandonment rests upon incarceration coupled with other factors such as parental neglect, lack of affection shown toward the child, failure to contact the child, financially support the child if able to do so, as well as disregard for the general welfare of the child.").

**{10}**     Because we affirm the termination of Father's parental rights under Section 32A-4-28(B)(3), we do not address his arguments regarding the sufficiency of the evidence to support termination under Section 32A-4-28(B)(2). *See In re Grace H.*, 2014-NMSC-034, ¶¶ 36, 38, 335 P.3d 746 (stating that presumptive abandonment is distinct from abandonment under Section 32A-4-28(B)(1) and Section 32A-4-28(B)(2)).

**{11}   IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**KATHERINE A. WRAY, Judge**