This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40837

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**SHEYENNE M.,**

Respondent-Appellant,

and

**ANGEL G.D.L.,**

Respondent,

**IN THE MATTER OF AMADO D.L.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Grace B. Duran, District Court Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Jennifer L. Munson
Las Cruces, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}**     Respondent-Appellant Sheyenne M. (Mother) appeals the district court's judgment terminating her parental rights to her child (Child), asserting that New Mexico Children, Youth and Families Department (CYFD) failed to (1) make reasonable efforts to allow Mother to comply with her required treatment plan, and (2) consider a guardianship placement for Child with a preferred family member. For the reasons that follow, we affirm.

**DISCUSSION**

**{2}**     Child was adjudicated as neglected by Mother in January 2022 following an abuse and neglect petition filed by CYFD in October 2021. The petition was supported by an affidavit stating in pertinent part that (1) Child tested positive for multiple narcotics at the time of his birth in April 2021; (2) despite being provided education, support, and referrals for substance abuse treatment, Mother was not engaged in a substance abuse treatment program; (3) Child was not attending early intervention services; and (4) Mother had not provided the necessary paperwork to allow Child to be taken by relatives to such early intervention services. In November 2021, Mother was arrested and remained incarcerated at the Otero County Prison—with an expected sentence of at least five years—throughout the duration of the proceedings. In April 2022, CYFD filed a motion to terminate Mother's parental rights (the termination motion), which the district court granted in its termination judgment filed in October 2022. In its judgment, the district court took judicial notice that Child was adjudicated as neglected and made the following pertinent findings: (1) "the causes and conditions of neglect that brought [C]hild into CYFD custody are unlikely to change in the foreseeable future despite reasonable efforts by CYFD and other appropriate agencies to assist [Mother] in addressing the conditions which render her unable to provide for [C]hild"; and (2) "[g]iving primary consideration to the physical, mental, and emotional welfare and needs of [Child]," "CYFD has demonstrated by clear and convincing evidence that [Child]'s best interests require" termination of Mother's parental rights. This appeal followed.

**I.     CYFD's Efforts to Assist Mother**

**{3}**     Mother argues that CYFD failed to make reasonable efforts to allow her to comply with her required treatment plan in order to sufficiently address and adjust the conditions which rendered her unable to properly care for Child. Specifically, Mother

contends that because she was incarcerated throughout the pendency of the proceedings and the COVID-19 pandemic resulted in limited services available to her while incarcerated, she was unable to comply with her treatment plan and would have needed more time to do so.

**{4}**     "Before a court may terminate parental rights based on abuse or neglect, it must find by clear and convincing evidence: (1) that the child was abused or neglected, (2) that the conditions and causes of the abuse and neglect were unlikely to change in the foreseeable future, and (3) that [CYFD] made reasonable efforts to assist the parent in adjusting the conditions which rendered the parent unable to properly care for the child." *State ex rel. Child., Youth & Fams. Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 30, 141 N.M. 692, 160 P.3d 601 (alterations, internal quotation marks, and citation omitted); *see* NMSA 1978, § 32A-4-28(B)(2) (2005, amended 2022) (same). Given the scope of Mother's arguments on appeal, only the third such requirement is at issue in this case.

**{5}**     "The standard of proof in cases involving the termination of parental rights is clear and convincing evidence." *State ex rel. Child., Youth & Fams. Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. "Clear and convincing evidence . . . instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Child., Youth & Fams. Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted). "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Child., Youth & Fams. Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. Finally, this Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *Vanessa C.*, 2000-NMCA-025, ¶ 24.

**{6}**     When reviewing the district court's findings regarding the reasonableness of CYFD's efforts to assist a parent in remedying the conditions and causes of neglect, we consider the totality of the circumstances. *See State ex rel. Child., Youth & Fams. Dep't v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 814. "Efforts to assist a parent may include individual, group, and family counseling, substance abuse treatment, mental health services, . . . and other therapeutic services." *Id.* (internal quotation marks and citation omitted). "What constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Patricia H.*, 2002-NMCA-061, ¶ 23. It is not the duty of this Court "to determine whether CYFD did everything possible; our task is limited by our statutory

scope of review to whether CYFD complied with the minimum required under law." *Id.* ¶ 28.

**{7}**     As of December 2021, Mother's treatment plan required that she participate in a substance abuse treatment program and submit to regular drug testing, maintain a safe and stable home for Child, demonstrate the ability to provide for Child's basic needs including food and medical care, follow through with all requirements of her criminal case and probation, participate in a parenting program, and participate in visitation with Child at the discretion of CYFD. The record reflects that CYFD made the following efforts throughout the proceedings to assist Mother in adjusting the conditions that rendered her unable to properly care for Child: (1) prior to Mother's arrest and incarceration, CYFD arranged two scheduled visits with Child, only one of which Mother attended; (2) CYFD continued in its attempts to schedule visitations between Mother and Child following Mother's incarceration, but CYFD reported that Mother's incarceration and COVID-19 pandemic restrictions caused barriers to such efforts given that services usually offered within prison facilities were on hold; (3) CYFD attempted to allow for visitation between Mother and Child to occur over video—in light of the restrictions on in-person visitation—and sent biweekly letters to Mother with pictures and updates about Child; (4) CYFD attempted to refer Mother to substance abuse and parenting classes, but such attempts were likewise impeded by the restrictions associated with Mother's incarceration and the COVID-19 pandemic; and (5) CYFD coordinated phone calls between Mother and Child.

**{8}**     At the August 2022 hearing on CYFD's termination motion, the district court heard testimony from a CYFD permanency planning worker who, while assigned to Mother's case, visited Mother in prison every month to discuss Mother's treatment plan. The permanency planning worker testified that she encouraged Mother to enroll in applicable classes available to Mother while incarcerated, including narcotics and parenting classes. Mother participated in one narcotics class session and one parenting class session, but did not further participate in either class after being placed in "the SHU" following behavioral issues with another inmate. The permanency planning worker testified that she asked Mother whether COVID-19 pandemic restrictions precluded her from attending more classes and that Mother maintained that the reason she could not attend more classes was because of behavioral issues and the consequences thereof. At the time of the August 2022 hearing, Mother had not had any contact—even telephonically—with Child since April 2022. The permanency worker testified to her professional opinion that Mother would be unable to safely parent Child in the foreseeable future given the anticipated length of Mother's incarceration, Child's age, the length of time Child had been in CYFD custody, and the lack of a bonded relationship between Mother and Child.

**{9}**     Before turning to our analysis of this issue, we reiterate two key principles relevant to this matter: first, our duty in reviewing Mother's appeal is not whether the district court *could* have reached a different conclusion in its judgment, but rather whether its conclusion, "when viewed in the light most favorable to the decision below, was supported by substantial evidence." *Patricia H.*, 2002-NMCA-061, ¶ 31. Second,

we need not determine that CYFD did everything possible to assist Mother in adjusting the conditions that rendered her unable to properly care for Child. *See id.* ¶ 28. Instead, we review whether CYFD's efforts to assist Mother complied with statutory requirements. *See id.*

**{10}** At the core of Mother's appeal is a contention that had she been afforded more time to comply with her treatment plan—and, in turn, had CYFD had more time to assist her in doing so—the outcome of the proceedings below could have been different. Under NMSA 1978, Section 32A-4-29(A) (2009, amended 2022), "[a] motion to terminate parental rights may be filed at any stage of the abuse or neglect proceeding by a party to the proceeding." To the extent Mother argues that CYFD should have waited to file its termination motion, she does not cite authority to support such a contention. *See Curry v. Great Nw. Ins Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). While Section 32A-4-29(G) *requires* CYFD to file a motion for termination of parental rights when a child has been in CYFD's custody for fifteen of the previous twenty-two months, under Section 32A-4-29(A), CYFD is *permitted* to file such a motion at any time during an abuse and neglect proceeding, even if—as in this case— the child has been in CYFD's custody for less than fifteen months. Here, based on the evidence before it, the district court could have reasonably concluded that the time it may take Mother to complete her treatment plan—which included resolution of her criminal matter—might well be too long to wait. *See Patricia H.*, 2002-NMCA-061, ¶ 35 (holding that the district court can reasonably conclude the time that it would take for a parent to complete the treatment plan might be too long to wait).

**{11}** Moreover, when balancing the interests of parents and children in matters such as this, the district court is not required to place a child "indefinitely in a legal holding pattern" in order to allow a parent to comply with a directed treatment plan. *Id.* ¶ 34 (internal quotation marks and citation omitted). To the extent Mother contends that her compliance with her treatment plan was delayed and impeded by COVID-19 pandemic restrictions, we note that in the present case any such delays and impediments are not attributable to any given party, including CYFD. We further emphasize that the record reflects that even during the periods of time in which services were limited due to the COVID-19 pandemic, CYFD continued to make efforts to assist Mother in complying with her treatment plan as permitted under applicable pandemic restrictions. Mother does not cite any authority in support of the proposition that CYFD should have waited a certain amount of time during or after the COVID-19 pandemic restrictions were lifted before filing its termination motion, and we decline to adopt such a proposition. *See Curry*, 2014-NMCA-031, ¶ 28. Considering the totality of the circumstances presented by this case, and viewing the evidence in the light most favorable to the decision below, we discern no error in the district court's finding that CYFD made reasonable efforts to assist Mother in adjusting the conditions that rendered Mother unable to properly care for Child.

## II.     Placement of Child With a Family Member

**{12}** Mother's remaining argument is that the district court erred in terminating her parental rights because CYFD failed to consider a guardianship placement for Child with a preferred family member. Mother contends that CYFD was required—but failed—to "seriously consider" placement of Child in a guardianship with his maternal grandparents rather than in adoption by Mother's cousin, with whom Child was placed beginning in January 2022. NMSA 1978, Section 32A-4-22(A)(6) (2016, amended 2022) requires that CYFD "identify, locate and give notice to all grandparents and other relatives and to conduct home studies on any appropriate relative who expresses an interest in providing care for the child." We have stated that CYFD's duty in this regard requires a "serious inquiry into whether [CYFD] has complied with its mandate to locate, identify, and consider relatives with whom to place children in its custody." *See State ex rel. Child., Youth & Fams. Dep't v. Laura J.*, 2013-NMCA-057, ¶ 61, 301 P.3d 860.

**{13}** To the extent Mother contends that Child's placement with Mother's cousin does not satisfy CYFD's duty to prioritize a child's placement with a relative, the record plainly refutes such a contention given that there is no controversy as to whether Mother's cousin is Child's relative. Further, Mother does not cite any authority, and we are aware of none, that requires CYFD to place a child who has been adjudicated as neglected in a guardianship rather than an adoption. Indeed, under NMSA 1978, Section 32A-4-25.1(B) (2016), following a permanency hearing, the district court shall order one of five different permanency plans, including either adoption *or* guardianship. This notwithstanding, CYFD did consider guardianship as a placement option for Child in this case, but decided against it based on Child's age, the length of Mother's anticipated incarceration, and the lack of bond between Child and Mother. Moreover, while CYFD is required to consider and prioritize a child's placement with willing and appropriate relatives over nonrelative placement options, CYFD is not obligated to place a child with a particular relative based on a parent's preference. While a parent may express preferences in regard to a child's placement, once the child is in CYFD's custody, the parent is "not in a position to decide where or with whom [the child] would be placed." *State ex rel. Child., Youth & Fams. Dep't v. Jerry K.*, 2015-NMCA-047, ¶ 31, 347 P.3d 724; *see also State ex rel. Child., Youth & Fams. Dep't v. John R.*, 2009-NMCA-025, ¶ 27, 145 N.M. 636, 203 P.3d 167 (explaining that while "a parent has a fundamental interest in the care, custody, and control of his or her children," that interest does not give a parent "absolute rights in their children; rather, parental rights are secondary to the best interests and welfare of the children").

**{14}** Regarding Mother's contention that CYFD failed to seriously consider whether Child could be placed in a guardianship with his maternal grandparents, we note that the record reflects that CYFD sought out and contacted relatives with whom Child could be placed, including Child's maternal grandparents. CYFD reported that the home study for Child's maternal grandparents was "put on hold" due to concerns related to substance abuse. CYFD further explained that the home of Child's maternal grandparents was "assessed as unsafe due to ongoing criminal activity and associations that put . . . [Child] in physical danger." Based on the record before us, we cannot conclude that CYFD's placement of Child with Mother's cousin rather than Child's maternal grandparents was erroneous.

**CONCLUSION**

**{15}** For the above reasons, we affirm.

**{16}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**